

*SHEET METAL WORKERS*
*LOCAL UNION NO. 49*

*&*



*SHEET Metal & AIR CONDITIONING*
*CONTRACTORS'*
*ASSOCIATION OF NEW MEXICO*

*EFFECTIVE April 1, 2013*
*THROUGH March 31, 2015*

# Table Of Contents

**ARTICLE I** JURISDICTION. ...................................................................................................... 1

**ARTICLE II** SUBCONTRACTING ............................................................................................... 2

**ARTICLE III** EMPLOYMENT / RATIOS ..................................................................................... 2

**ARTICLE IV** UNION OBLIGATION TO FURNISH SHEET METAL WORKERS .................... 2

**ARTICLE V** MEMBERSHIP (UNION) REQUIREMENT / JOINT HIRING HALL COMMITTEE ... 3

**ARTICLE VI** WORK DAY – OVERTIME – SHIFT WORK – NOTIFICATION -- HOLIDAYS ..... 4

**ARTICLE VII** DISPATCH -- ZONES--TRAVEL ......................................................................... 5

**ARTICLE VIII** WAGES--TRUST FUNDS-- RATE ITEM—NOTICES--PAY DAY ................... 7

**ARTICLE IX** TOOLS ................................................................................................................... 16

**ARTICLE X** GRIEVANCE PROCEDURES ................................................................................ 16

**ARTICLE XI** APPRENTICE PROGRAM ..................................................................................... 20

**ARTICLE XII** STEWARDS .......................................................................................................... 22

**ARTICLE XIII** FOREMEN ........................................................................................................... 22

**ARTICLE XIV** WORKING OWNERS .......................................................................................... 23

**ARTICLE XV** EMPLOYER'S EQUIPMENT ................................................................................ 23

**ARTICLE XVI** PASSES AND SECURITY CLEARANCES ....................................................... 23

**ARTICLE XVII** SAFETY TRAINING/CONTINUING EDUCATION ............................................ 23

**ARTICLE XVIII** PICK UP TIME .................................................................................................. 24

**ARTICLE XIX** CHANGE SHACKS ............................................................................................. 24

**ARTICLE XX** COMPOSITE CREWS .......................................................................................... 24

**ARTICLE XXI** LABOR COMMITTEE. ........................................................................................ 24

**ARTICLE XXII** WORK RULES, OBLIGATIONS AND RESPONSIBILITIES ........................... 25

**ARTICLE XXIII** REST BREAKS ................................................................................................. 25

**ARTICLE XXIV** PREDETERMINED WAGE INFORMATION .................................................... 25

**ARTICLE XXV** SEPARATE AGREEMENTS AND ADDENDA .................................................. 26

**ARTICLE XXVI** REPAIR OF DEFECTIVE AND/OR INFERIOR WORK .................................. 26

**ARTICLE XXVII** TARGETED JOBS/MARKET ADVANTAGE .................................................. 26

**ARTICLE XXVIII** EFFECTIVE AND EXPIRATION DATES ...................................................... 26

# STANDARD FORM OF UNION AGREEMENT

## Sheet Metal, Roofing, Ventilating, and Air Conditioning Contracting Divisions of the Construction Industry

### PREFACE

This Agreement entered into this 1st day of April, 2013, by and between INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION (SMART) LOCAL UNION NO. 49, hereinafter referred to as the Union, and SHEET METAL AND AIR CONDITIONING CONTRACTORS' ASSOCIATION OF NEW MEXICO (SMACCA of NM) for the entire state of New Mexico and these Counties in Texas: Brewster, Culberson, El Paso, Hudspeth, Jeff Davis, Pecos, Presidio, Reeves, and Terrell.

Note: For the purpose of clarification, the terms "Employer" and "Contractor" are synonymous.

(a)     Employers' signatory to this Agreement must comply with the following:

    (1)     Be licensed as required by state, county and/or municipal ordinance.

    (2)     Occupy a permanently established place of business, with an address other than a residence.

    (3)     Maintain Workers' Compensation Insurance covering all employees covered by this Agreement.

(b)     The Local Union will refuse to furnish men to other than bona fide Sheet Metal Contractors who are signatory to this Agreement, or are signatory to an Agreement with another Local Union which is affiliated with SMART, except where special circumstances make necessary the furnishing of men to protect the Union's jurisdiction.

### ARTICLE I
### JURISDICTION

SECTION 1. SCOPE OF WORK

This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in, but not limited to:

(a)     the manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or non-ferrous metal work, whether architectural, heating, ventilating, air conditioning, and all other materials used in lieu thereof and of all HVAC systems, air veyor systems, exhaust systems and air-handling systems, regardless of material used including the setting of all equipment and all reinforcements in connection therewith;

(b)     all lagging over insulation and all duct lining;

(c)     testing and balancing of all air-handling equipment and ductwork;

(d)     the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches;

(e)     metal roofing; and

(f)     all other work included in the jurisdictional claims of SMART.

SECTION 2.  WORK PRESERVATION

All Employers bound by this Collective Bargaining Agreement do hereby agree that on all projects the Employer will seek to obtain all work set forth in Section 1. (a) through (f) of this Article.  This will include, but not necessarily be limited to, all materials, equipment and fabrication customarily furnished by the sheet metal contractor.  It is the intention of the parties, by entering into this Agreement, to preserve work customarily performed by members of SMART Local 49, AFL-CIO.

**ARTICLE II**
**SUBCONTRACTING**

SECTION 1.  JOB SITE

The Employer will not subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein, including without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2.  PREFABRICATION

Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for pre-fabrication of materials covered herein, such pre-fabrications will be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

**ARTICLE III**
**EMPLOYMENT / RATIOS**

SECTION 1.  EMPLOYMENT

The Employer agrees that none but sheet metal journeymen, intermediate journeymen, registered apprentices, preapprentices, classified workers, and material handlers (including Service & Controls technicians) will be employed on any work described in Article I and will be paid as such regardless of the type of work the employee is directed to do.  Trust Fund contributions, deductions and conditions will be applicable to all employee work hours, except travel time which occurs after the employee has accumulated eight (8) hours of work/travel in a day.  Further, for the purpose of proving jurisdiction, the Employer agrees to provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site.  List of such specific items, which may be revised from time to time, as agreed to by and between SMACCA of NM and SMART, will be provided to the Employer.

SECTION 2.  RATIOS

Employers may employ apprentices, preapprentices and classified workers under the general direction of a qualified journeyman sheet metal worker in accordance with governing laws.

**ARTICLE IV**
**UNION OBLIGATION TO FURNISH SHEET METAL WORKERS**

SECTION 1.  OBLIGATION

The Union agrees to furnish, upon request by the Employer, duly qualified sheet metal journeymen, intermediate journeymen, registered apprentices, preapprentices, classified workers and material handlers (including Service & Controls technicians) in sufficient numbers as may be necessary to properly execute work contracted by the Employer in

2

the manner and under the conditions specified in this Agreement. When the Union is unable to furnish sheet metal workers within two working days (Monday through Friday), the Employer may secure sheet metal workers from any source available.

**ARTICLE V**
**MEMBERSHIP (UNION) REQUIREMENT / JOINT HIRING HALL COMMITTEE**

SECTION 1. CONDITIONS

The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

SECTION 2. RECOGNITION

The Union may request recognition as the exclusive collective bargaining agent for all employees employed by the Employer in the classifications and geographic jurisdiction covered by this Agreement, whether or not they are members of the Union. In determining whether the union has the support of a majority of the Employer's employees, such showing may be based upon either a majority of those employed at the time such recognition is requested, or a majority of those eligible to vote under the National Labor Relations Board's Steiny-Daniel formula. No later than 8 days following the Union's request, the Employer shall review employees' authorization cards submitted by the Union in support of its claim to represent and have the support of a majority of such employees. If a majority of the employees has designated the Union as their exclusive collective bargaining representative, the Employer will recognize the Union as such majority representative of all employees in the classifications and geographic jurisdiction covered by this Agreement. The Employer shall not file or cause the filing of a petition for election or unfair labor practice charge with the National Labor Relations Board in connection with any demands for recognition provided for here. Article X of this Agreement shall be the sole and exclusive means of resolving any dispute concerning this provision.

If during the term of this Agreement, the Labor-Management Relations Act of 1947 is amended by Congress in such manner as to reduce the time within which an employee may be required to acquire Union membership, such reduced time limit will become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

The provisions of this Article will be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article will be deemed to take effect as to involved employees immediately upon compliance with such conditions.

SECTION 3. JOINT HIRING HALL COMMITTEE

The Local Joint Adjustment Board, as provided for under Article X of this Agreement, will serve as the Joint Hiring Committee and actions taken or deadlocked questions will have the same recourse as provided for in the grievance procedures. The Joint Hiring Committee is empowered:

(a)    To establish any and all rules and regulations from time to time that it deems advisable for the operation of the Hiring Hall registration system, for the following classifications.

    1)    Journeyman
    2)    Intermediate Journeyman
    3)    Classified Worker
    4)    Apprentices

3

    5)      Pre-apprentices

    6)      Material Handlers

(b)     Properly post the rules and regulations at the Union office.

(c)     To hear and determine any and all disputes or grievances arising out of the registration system including, but not limited to, grievances arising from out-of- work registration and the preparation of the registration pool.

(d)     Any applicant or registrant will have the right to appeal any dispute or grievance arising out of and relating to the operation and functioning of the registration system to the Joint Hiring Committee. When any job applicant is aggrieved for any reason related to the operation of the registration system, the aggrieved may, within ten (10) days following the occurrence of the event constituting the basis for the grievance, file a written and specific statement of the grievance with (a) the Union representative in charge of the registration system against which the aggrieved is complaining, and (b) any Employer signatory to this Agreement or the SMACCA of NM. Grievances will thereafter proceed in accordance with Article X of this Agreement.

     Determinations of the Joint Hiring Committee will be made without regard to an applicant's membership or non-membership in the Union.

## SECTION 4. SUBSTANCE ABUSE / DRUG TESTING

The parties are committed to maintaining a workplace that is safe, productive, and free of alcohol and illegal drugs. Therefore, the Hiring Hall Committee shall establish a substance abuse program which will include, as a minimum, the following components: owner mandated reasonable suspicion, post accident, and random drug and alcohol testing. In the case of random testing, the procedures shall be established and administered in a manner so that such testing is conducted in a manner that is truly random. Any testing program shall be conducted on an industry wide basis, and in conformity with all applicable laws. The parties shall establish an appropriate means of funding such testing activities on an industry wide basis.

## SECTION 5. SERVICE FEE PROVISION

All registration pool applicants must pay a monthly registration fee of not less than three times the Journeyman total hourly package rate for Zone 1. Service fees are due and payable before the first day of each month. Registrants who fail to pay their fees by the first day of the month will have their name removed from the registration pool. Members in good standing are excluded from the provisions of this paragraph.

**ARTICLE VI**
**WORK DAY – OVERTIME – SHIFT WORK – NOTIFICATION - HOLIDAYS**

## SECTION 1. WORK DAY

(a)     The regular work day will consist of eight (8) to ten (10) consecutive hours labor in the shop or on the job between six (6) a.m. and six (6) p.m. The regular workweek will consist of consecutive workdays totaling forty (40) hours labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full-time or part-time labor performed during such hours will be recognized as regular working hours and be paid for at the regular. Except as otherwise provided pursuant to Subsection (a) and Sections 2 and 3 of this Article, all work performed outside of regular working hours and performed during the regular work week will be at one and one/half (1-1/2) times the regular rate of pay.

(b)     Up to ten (10) consecutive hours work (excluding lunch) may be performed at the straight time rate of pay on existing, occupied buildings during any twenty-four (24) hour period; work beyond ten (10) hours per day or over forty (40) hours per week will be subject to overtime as stated in Section 2 of this Article.

     1.    Occupied building will be defined as a building or work area currently in use that work must be scheduled around due to noise or dust.

(c)    Employees will be at the shop or project site at their work location at the scheduled starting time each day and will remain at their work location until quitting time.

SECTION 2.  OVERTIME

Overtime will be paid after ten (10) hours per day or forty (40) hours per pay period, and for any time worked on Saturday or Sunday, at the rate of one and one-half (1-1/2) times the regular rate of pay, with the exception of the nine named holidays listed in Section 5 of this Article, which will be paid at the rate of two (2) times the regular rate of pay. Worker cannot be penalized for not working Sundays and Holidays.

SECTION 3.  SHIFT WORK

(a)    Shift work will be allowed on all construction work.  Not less than five (5) full consecutive days will justify shift work.  Shift work may end on a day other than Friday on a job-by-job basis as mutually agreed upon between the Employer and the Local Union.  Otherwise, shift work will end on Friday.

(b)    Employee shall receive their regular daytime rate of pay between the hours of 6:00am and 6:00pm.  They shall receive five percent (5%) shift premium pay for all hours worked between 6:00pm and 1:00am.  They shall receive ten percent (10%) premium pay for all hours worked between 1:00am and 6:00am.

(c)    The Local Union office and the shop or job steward must be notified when shift work is to be practiced.

(d)    All shift work over the regular shift hours will be paid at the overtime rate of pay as provided in Section 2 of this Article.

SECTION 4.  NOTIFICATION BY EMPLOYER

It is agreed that all work performed outside the regular working hours during the regular work week and on holidays will be performed only upon notification by the Employer to the Local Union in advance of scheduling such work.  Preference for overtime and holiday work will be given to men on the job on a rotation basis so as to equalize such work as nearly as possible.

SECTION 5.  HOLIDAYS

(a)    New Year's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, Christmas Eve Day and Christmas Day will be the observed holidays. All work performed on holidays will be paid at two (2) times the regular rate of pay.

(b)    Only the nine (9) named holidays above will be observed, and if any of the holidays fall on a Saturday, the preceding Friday will be observed; if any of the holidays fall on Sunday, the following Monday will be observed.

**ARTICLE VII**
**DISPATCH, ZONES & TRAVEL**

SECTION 1.  DISPATCH

The jurisdiction of the Union will consist of the following zones:  Zone 1; Zone 2; and Zone 3.  Employees may be dispatched to a job in any zone by the Union or by the Employer.  Apprentices, preapprentices, classified workers and material handlers will receive 100% of the subsistence and Zone premiums.

SECTION 2.  SUBSISTENCE

The parties intend travel pay to fairly compensate employees for travel, not to place contractors at a competitive disadvantage due to geographic location or to create artificial barriers against out-of-area contractors.

a)   Subsistence will be paid in any area outside the Employer's home zone, as described in Section 3(a) of this Article, unless the jobsite is within ninety (90) miles of an employee's principle place of residence, in which case the Employer will not be required to pay subsistence to that employee while working on that jobsite.

b)   If an overnight stay is required, $45.00 subsistence will be paid for each day worked outside of the Employer's home zone as described in Section 3 (a) and 2 (a) of this Article.

*EXCEPTION: No subsistence is required should employer decide to cover room cost at a suitable location and no more than two (2) workers per room.*

SECTION 3.  ZONE 1

Zone 1 will be described as:

(a)   Any area within an Employer's home zone.  An Employer's home zone will consist of a 90-miles radius from the main post office in the municipality of the Employer's primary place of business.

SECTION 4. ZONE 2 (INDUSTRIAL)

(a)   Industrial work will be defined as all new construction work performed on the following types of facilities; Electrical generation plants, Co-generation plants fifty (50) megawatts and over, Refineries, Natural and LP Gas plants, Mills, Mines, and Concentrators.  Maintenance and retrofit work are excluded from this section.

(b)   The minimum rate of pay for all work described in (a) above will be as indicated under Zone 2 in the Wage Schedule of this Agreement. ($1.00/hr. premium)

SECTION 5. ZONE 3 (LOS ALAMOS)

(a)   Zone 3 will be described as all work on LANL property, and all prevailing wage work within the county of Los Alamos.

(b)   The minimum rate of pay for all work described in (a) above will be as indicated under Zone 3 in the Wage Schedule of this Agreement. ($2.00/hr. premium)

SECTION 6. TRAVEL

(a)   All time spent traveling during the regular work day, as described in Article VI, Section 1 of this Agreement, will be considered time worked and will be paid at the Zone 1 rate of pay, provided such travel is directed by the Employer.  Travel before or after the regular workday will not be considered time worked and will not be paid unless required by Federal or State Law.  If required by law, all time spent traveling outside of the regular work day will be paid at the overtime rate of one and one half (1½) times two thirds (2/3) the regular Zone 1 rate of pay.

(b)   Sheet metal journeymen, intermediate journeymen, apprentices, preapprentices, classified workers and material handlers covered by this Agreement will not be required, as a condition of employment, to furnish the use of an automobile or other conveyance to transport the Employer's personnel, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation will be provided by the Employer. This provision will not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time, or once from job to job during the day, or from shop or job to home at quitting time. An employee may drive or ride in a company vehicle to and from the work site or furnish their own transportation. In either event, the employee will be at the work site at starting time and remain until quitting time, performing a full day's work for a full day's pay.

(c)   If an Employer sends an employee to perform work outside of the territorial jurisdiction of the United States of America or Canada, travel pay and/or subsistence arrangements shall be negotiated locally.

# ARTICLE VIII
## WAGES, TRUST FUNDS, RATE ITEMS, NOTICES, PAY DAY

SECTION 1.  WAGES

The minimum rate of wages for sheet metal workers covered by this Agreement, when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article I of this Agreement, will be set forth in the Wage Schedules included in this Agreement, unless otherwise stated within this Agreement and except as hereinafter specified in Section 2.

SECTION 2.  HIGHER WAGE SCALE

On all work specified in Article I of this Agreement, fabricated and/or assembled by sheet metal journeymen, apprentices, preapprentices and classified workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other Local Union affiliated with SMART whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the job site will be paid to the employee performing such work in the home shop or sent to the job site.  Besides wage equalization between Local Unions, wage equalization will be required between "collective bargaining areas."

SECTION 3.  MANUFACTURED ITEMS

The provisions of Section 2 of this Article, Section 2 of Article II and Section 1 of Article III will not be applicable to the manufacture for sale to the trade or purchase of the following items:

1.   Ventilators
2.   Louvers
3.   Automatic and fire dampers
4.   Radiator and air conditioning unit enclosures
5.   Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality.
6.   Mixing (attenuation) boxes
7.   Plastic skylights
8.   Air diffusers, grilles, registers
9.   Sound attenuators
10.  Chutes
11.  Double-wall panel plenums
12.  Angle rings

SECTION 4.  AIR POLLUTION CONTROL SYSTEMS

The provisions of Section 2 of this Article will not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings, except when such a provision is contained in the Local Union agreement or addendum to the SFUA.

SECTION 5.  TERRITORIAL JURISDICTION

Except as provided in Sections 2 and 6 of this Article, the Employer agrees that sheet metal journeymen, apprentices, preapprentices and classified workers hired outside of the territorial jurisdiction of this Agreement will receive the wage scale and working conditions of the local Agreement covering the territory where such work is performed or supervised.

SECTION 6. WORK OUTSIDE THIS JURISDICTION

When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another union affiliated with the SMART, and qualified sheet metal workers are available in such area, the Employer may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom will be from the Employer's home jurisdiction. All additional sheet metal workers will come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement will be paid at least the established minimum wage scale specified in Section 1 of this Article, but in no case less than the established wage scale of the local Agreement covering the territory where such work is performed and supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer will be otherwise governed by the established working conditions of that Local Agreement. If employees are sent into an area where there is no Local Agreement of the SMART covering the area, then the minimum conditions of the home Local Union will apply.

SECTION 7. CONTRACTUAL BENEFITS

In applying the provisions of Sections 2, 5 and 6 of this Article, the term "wage scale" will include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said sections.

SECTION 8. WELFARE BENEFITS

Welfare benefit contributions will not be duplicated. When sheet metal workers are employed temporarily outside the jurisdiction of their home Local Union, the parties signatory to this Agreement agree to arrange through the SMWIA Local 49 Family Health Plan to transmit health and welfare and 401(k) contributions made on behalf of the employee's home Local Union. The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the Local Collective Bargaining Agreement when health and welfare contributions are transmitted on their behalf by trust funds by other areas.

When sheet metal workers are temporarily employed outside the jurisdiction of their home local union, the parties signatory to this agreement shall arrange to transmit any 401(k) contributions required to be made to a 401(k) plan where the work is performed to a 401(k) plan established for the employee's home local union, and/or to the National Supplemental Savings Fund.

This obligation is conditioned upon a suitable reciprocity arrangement being agreed to by the trustees of such plans.

SECTION 9. PAYMENT OF WAGES/ELECTRONIC TRANSFER

(a)     Wages at the established rates specified herein will be paid weekly in the shop or on the job at or before quitting time on the specified payday, except in the event the specified payday is a holiday, in which case on the day preceding the holiday at or before quitting time. Time may be estimated to allow for payday preceding a holiday. If adjustments are necessary they may be made the following week without the Employer accruing any penalties. No more than three (3) working days pay will be withheld; however, employees when discharged will be paid in full.

Electronic transfer of funds or automatic deposit may be allowed at the discretion of the employee, provided however, that if an employee is discharged he will be paid in full at the time of discharge.

If payment is made via electronic transfer or automatic deposit then the pay voucher shall be received at the employee's last known mailing address no later than the end of the next pay period.

8

(b)     If an employee is not paid by electronic transfer or check by quitting time on the specified pay day, the employee will continue working until such time as paid, up to one and one-half (1-1/2) hours beyond the regular quitting time, and will be paid at the overtime rate of pay for such work.

(c)     In the event an employee, in a situation as described in Paragraph (b) above, has not been paid by 8:00 a.m. the following day, the employee will receive the regular rate of pay until such time as the employee is paid, for up to four (4) hours, such time period ending at 12:00 noon that day. The employee's presence at a job site or shop will not be a requirement of this provision.

(d)     In the event an employee is paid by a nonnegotiable check, the employee will be entitled to the compensation as provided for in Paragraphs (b) and (c) of this section; however, the requirement that the employee work during the one and one-half (1-1/2) hours overtime period is not applicable to this Paragraph.

(e)     In the event of underpayment or overpayment of wages or other compensation provided for in the Agreement, and payment or recovery has not been made, either party will have available to them the remedies provided for under Article X; however, all claims will be made in writing to the party alleged to be in violation within thirty (30) days from the time of the alleged violation.

(f)     Employers will use and retain a system of time cards and definitive voucher copies which lends itself to an easy cross reference with the books of record, government payroll reporting, trust fund contributions, withholding and/or other deductions.

SECTION 10.  SHOW UP TIME

Sheet metal journeymen, intermediate journeymen, apprentices, preapprentices, classified workers and material handlers who report to work by direction of the Employer and are not placed at work will be entitled to two (2) hours pay at the established rate.  This provision, however, will not apply under conditions over which the Employer has no control. Employees who arrive physically unable to work, without proper tools or credentials, or who are not specifically qualified as requested will not be paid show up time.

SECTION 11.   TERMINATION OR DISCHARGE

In the event of the termination or discharge of any employee, the Employer will give to the employee either Two (2) hours notice of such termination or discharge, or Two (2) hours pay in lieu thereof. Payment is to be made to the employee at the designated job site.

SECTION 12.  NATIONAL INDUSTRY FUND

(a)     Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of Collective Bargaining Agreements, research and promotion, such programs serving to expand the market for the services of the sheet metal industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, will be used for any other purpose except as expressly specified above.

(b)     The Employer will pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) the hourly contribution rate established by the IFUS trustees. The IFUS trustees shall notify the SMART of any changes to the established contribution rate prior to such change becoming effective. The Employer shall contribute said amount the contribution rate per hour for each hour worked on or after the effective date of this agreement as shown in the Wage Schedules.  Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(c)     The IFUS will submit to the SMART not less often than semiannually written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS will include in such written report a financial statement attested to by a

certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures will be furnished to the SMART upon written request.

(d)     Grievances concerning use of IFUS funds for purposes prohibited under Section 12(a) or for violations of other subsections of this section may be processed by the SMART directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator will be selected by the Co-Chairmen of the National Joint Adjustment Board. The Arbitrator will be authorized to impose any remedial order deemed appropriate for violation of this Section, including termination of the Employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section, (Section 12, Article VIII) and no other.

SECTION 13.  LOCAL (SMACCA of NM) INDUSTRY FUND

(a)     Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of Collective Bargaining Agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payment, however, will be used for any other purpose except as expressly specified above.

(b)     The Employer shall pay to the SMACCA of NM (hereinafter referred to as Local Industry Fund) the hourly contribution rate established by the trustees of such local industry fund. The trustees of the local industry fund shall notify the local union of any changes to the established contribution rate prior to such change becoming effective. The Employer shall contribute said amount for each hour worked on and after the effective date of this Agreement by each employee of the Employer

(c)     The Fund will furnish to the Business Manager of the Union, not less often than semiannually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the Fund will include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and statement of receipts and disbursements. Further specific detailed information in regard to Fund activities or its receipts and/or disbursements will be furnished to the Business Manager of the Union upon the written request.

(d)     Grievances concerning use of local industry fund monies to which an Employer will contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section will be handled under the provision of Article X of this Agreement. The National Joint Adjustment Board will be authorized to impose any remedial order for violation of this Section.

SECTION 14.  CONTRIBUTIONS – PROJECT AGREEMENTS / MAINTENANCE AGREEMENTS

The Union and the Employer recognize that the contributions provided in Sections 12 and 13 of this Article support activities that benefit the entire sheet metal industry.  It is essential that Employers support these activities, even though the Employer may be performing sheet metal work under the provisions of a separate project agreement or maintenance agreement.  Therefore, hours worked for purposes of determining the contributions required under Sections 12 and 13 of this Article shall include all hours worked by each employee of the Employer under any project agreement or maintenance agreement unless specifically excluded by the terms of a written addendum that is negotiated by the SMACCA of NM and the Local Union that are parties to this agreement.

SECTION 15.  INTERNATIONAL TRAINING INSTITUTE, NEMI, SMOHIT

The parties authorize the trustees of all National Funds (as defined below) to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various National Funds. The parties recognize that the National Funds can receive and process contribution reports and remittances electronically. The parties agree to encourage employers to utilize the electronic reporting and remittance system.

(a)    Effective as of the date of this Agreement, the Employer shall contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) the hourly contribution rate established by the ITI Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 10th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or, for purposes of collection and transmittal electronically or through The National Trust Fund Office.

(b)    Effective as of the date of this Agreement, the Employer shall contribute to the National Energy Management Institute Committee (NEMIC), the hourly contribution rate established by the NEMIC Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 10th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or, for the purposes of collection and transmittal electronically or through The National Trust Fund Office.

(c)    Effective as of the date of this Agreement, the Employer shall contribute to the Sheet Metal Occupational Health Institute Trust (Institute) the hourly contribution rate established by the Institute's Trustees. Such amount shall be contributed for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. In the event that such hourly contribution rate is changed during the term of this Agreement, such change shall become effective during the next anniversary date of this Agreement. Payment shall be made on or before the 10th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or, for purposes of collection and transmittal electronically or through The National Trust Fund Office.

(d)    The parties agree to be bound by, and act in accordance with, the respective Plan Documents, Agreements and Declarations of Trusts and/or Trust Documents establishing or governing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States, and to the extent that this Agreement requires contributions to the following funds, the Sheet Metal Workers' National Pension Fund First Alternative Schedule, National Stabilization Agreement of the Sheet Metal Industry Trust Fund, (collectively, "National Funds"), as applicable and the separate agreements and declarations of trusts of all other local or national programs and benefit plans to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust or plan documents as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said documents.


SECTION 16.  TRUST FUNDS

(a)    The Employer will contribute to the Sheet Metal Workers' Health and Welfare Family Health Plan, Local and National Industry Funds, Local Training Fund, International Training Institute, SMOHIT, NEMIC, National Pension Fund, SASMI, Sheet Metal Workers Local 49 Defined Contribution Pension Plan (401-K) and any other parties or Funds in accordance with the Agreement.

(b)    The Employer will deduct from the net pay of each employee amounts as specified in Article VIII, Sections 23, 24 and 26.

(c)     The Employer will make fringe benefit contributions for each hour worked by employees covered by this Agreement as per the Wage Schedules of this Agreement.

SECTION 17.  PAYMENT OF TRUST FUNDS

Contributions and deductions will be paid monthly through the respective Trust Fund(s) Office(s). The Board of Trustees of the various funds will provide the Employer with the necessary forms for the transmittal of the monies. Information will be readily corroborative with the books of record.

SECTION 18.  MONTHLY REPORTS

Monthly reports will be mailed to the respective Trust Fund(s) Office(s), with a copy to the SMACCA of NM office and Local Union No. 49 office, and applicable remittance will cover through the last day of the regular pay week period occurring during the reportable month. The subsequent monthly report will commence with the day following the last previous day reported.

SECTION 19.  REPORT DUE DATES AND PENALTIES

(a)     Monthly reports and payments will be due in the Trust Fund Office on the 10th day of the month following the end of the reportable month.

(b)     Monthly reports and payments not received by the 10th day of the month following the end of the reportable month will be delinquent.

(c)     All delinquent reports and payments will incur fifteen percent (15%) per annum liquidated damages.

(d)     All delinquent reports and payments not submitted by the last day of the month in which they are due will be assessed interest at a rate to be set from time to time by the Board of Trustees from the 10th day of that month.

(e)     Any Employer who fails to submit a monthly report by the 10th day of the month will be assessed a $10.00 per month late fee.

(f)     Any Employer that is delinquent in its submission of contributions and/or its monthly report will be assessed the cost of any audit that the Board of Trustees subsequently orders.

(g)     Any Employer that is delinquent in its submission of contributions and/or its monthly report will be assessed all attorney's fees incurred by the Board of Trustees, including the cost of pre-litigation legal fees and expenses.

(h)     The Board of Trustees has full authority to implement such collections and procedures it deems appropriate to enable it to meet its fiduciary obligations to collect delinquent contributions.

(i)     If reports and payments, including applicable penalties, have not been brought to a current condition by the 15th day of the following month, the Trustees of each respective Fund may pursue all remedies available, including litigation and/or instructions to the Local Union to withdraw all bargaining unit employees.

(j)     The Union will refer employees back to the Employer who is delinquent when delinquent reports and all assessments are received in the Trust Fund office.

SECTION 20.  SECURITY REQUIREMENTS

(a)     Each Employer hiring employees covered under Article I of this Agreement will furnish a security for the payment for fringe benefit contributions in the minimum amount of ten- thousand dollars ($10,000). Security may take the

form of a bond, cash collateral, or other form of security acceptable to the Board of Trustees. The amount of the security will be based on the estimated amount of an Employer's fringe benefit obligation projection per month, equated to six (6) weeks. If an Employer's amounts on reports exceed its security for three (3) consecutive months, or by joint demand of the Board of Trustees of the various funds, it will increase it's security to the next applicable five thousand dollar ($5,000.00) increment. If a surety bond is furnished, such bond will be secured with a company and in such form as is satisfactory and payable to the Board of Trustees of the various funds under this Agreement.

(b)    This security is for the use and the benefit of the funds, guaranteeing and assuring payment of such moneys due in accordance with this Agreement and together with reasonable expenses incurred in the collection thereof.

(c)    Security documents will be placed in the Trust Fund Office prior to the referral of any employees by the Union to Employers. It will be the obligation and the duty of the officials of the Union to confirm the existence of effective security at the Trust Fund Office.

(d)    When an Employer terminates the last employee on whom benefits are being accrued and funds being paid to the Trust Fund Office, Employer will indicate on the final report form that such is the case. When the information is received by the Trust Fund Office, this information is to be immediately relayed to the office of the Union, followed by a confirmation (in writing) of such information.

(e)    Failure to furnish and maintain security in accordance with the requirements in the Agreement will constitute delinquency, and will be subject to the conditions and penalties as set forth in Section 19 of this Article.

SECTION 21.  SMWIA LOCAL 49 FAMILY HEALTH PLAN

The SMWIA Local 49 Family Health Plan and Declaration of Trust, established January 26, 1953, is hereby renewed without interruption and will be administered by a Joint Board of six (6) Trustees, composed of three (3) Trustees designated by the SMACCA of NM and three (3) Trustees designated by the Union. The Joint Board of Trustees will have full authority and power to administer the plan, decide upon its benefits and rule with respect to all technical questions which arise.

(a)    The Employer will contribute the amount specified in the Wage Schedule for each hour worked by each employee covered by this Agreement to the SMWIA Local 49 Family Health Plan. Payment will be made on or before the 10th day of the succeeding month and will be paid by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(b)     The parties to this Agreement will have the right, upon recommendation of the Joint Board of Trustees of the SMWIA Local 49 Family Health Plan, to cancel the Agreement of any Employer found in violation of any provision of this Section and to take any other action it deems necessary, notwithstanding any other provision or section to this Agreement to the contrary.

SECTION 22.  NATIONAL PENSION FUND

(a)    The Employer agrees to adopt the National Pension Fund Plan "A" as presently constituted and as the same may be amended from time to time, to be bound by all rules and regulations of the plan as adopted by the trustees, as presently existing and as the same may be amended from time to time.

(b)    Each Employer will contribute amounts per hour as set forth in the Wage Schedules attached to this Agreement. Payment will be made on or before the 10th day of the succeeding month and will be paid by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(c)    The parties to this Agreement will have the right, upon recommendation of the Joint Board of Trustees of the Sheet Metal Workers National Pension Fund, to cancel the Agreement of any Employer found in violation of any

provision to this Article and to take any other action it deems necessary notwithstanding any provision or section of this Agreement to the contrary.

(d)     The Employer and the Union understand that, during the term of this Agreement, the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund") has issued a Rehabilitation Plan under the Pension Protection Act of 2006 and may in the future issue a Funding Improvement Plan under the Act. In addition, the NPF's Rehabilitation Plan or Funding Improvement Plan may provide for schedules which must be adopted by new or existing parties to this agreement.

(e)     The parties agree that any schedule described above will be deemed to be adopted automatically if, in accordance with this Agreement, the Union allocates or reallocates a portion of the wage and fringe-benefit package, or where the agreement provides for an automatic allocation or reallocation of the wage and fringe-benefit package, that is sufficient to cover fully any increases in contribution rates to the pension fund that has issued that schedule.

(f)     It is undesirable to pay a surcharge upon pension contributions, or face other undesirable consequences for failure to adopt a schedule.  Accordingly, in the absence of a reallocation as provided above, at such time as the pension fund(s) furnishes the Employer and the Union with schedules as provided above, either party may re-open this Agreement upon thirty days written notice to the other, for the purpose of reaching agreement upon the adoption of one of those schedules.  During the negotiations, the parties shall give due recognition to the desirability of maintaining pension benefits in light of economic conditions in the local area.

(g)     The parties agree further that the schedule described above will become part of this agreement, and will be incorporated by reference herein, on the date the schedule is adopted or is deemed to have been adopted automatically in accordance with the terms above.  The parties will not take any action or actions inconsistent with the NPF's Rehabilitation Plan or Funding Improvement Plan of which the schedules are a part, as modified or amended from time-to-time.


SECTION 23.  VACATION SAVINGS DEDUCTION (Voluntary)

The Employer will deduct and withhold up to the hourly amounts shown in the Wage Schedules. Each employee will designate the hourly amount they wish to have withheld from their paycheck.  Payment will be made on or before the 10th day of the succeeding month and will be paid by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

The Board of Trustees of the Sheet Metal Workers' Local 49 Defined Contribution Pension Plan will have authority to receive the vacation deductions, hold them in pooled bank accounts temporarily and without paying interest, deduct authorized deductions, deposit them into individual bank accounts or, if no accounts exists, issue checks to the appropriate employees, and pursue the collection of delinquent payments.  Journeymen traveling from other local unions jurisdictions to work in Local 49's jurisdiction will not have vacation withheld.

The parties to this Agreement will have the right, upon the recommendation of the Joint Board of Trustees of the Sheet Metal Workers' Local No.49 Defined Contribution Pension Plan, to cancel the Agreement of any Employer found in violation of any provision of this Section and to take any other action it deems necessary, notwithstanding any other provision of section to this Agreement.  Annual time off for vacations for each employee will be scheduled once in every twelve (12) month period from January 1st, through December 31st.  The following rules will apply to the calculation and scheduling of vacations:

(1)     Vacation time off will not exceed five (5) working days. When an employee has less than one (1) week accumulated vacation, the employee will be required to take off only as many vacation days as accumulated, in full days of pay.

(2)     Time off for vacation is not accumulated from one vacation year to the next vacation year.

(3) There will be an interval of at least three (3) months between a vacation for an employee in one vacation year and the vacation scheduled in the next vacation year.

(4) Any employee who is unable to take the vacation at the time agreed upon, because of accident or sickness, or because the employee is required by the Employer to work, will be granted the vacation by the Employer as soon thereafter as is reasonable and convenient.

(5) At the direction of the Local Union, and with thirty (30) days prior notice, the Vacation Fund administrators will, upon receipt of vacation deduction monies, transfer the same to a bank or credit union specified by the Local Union.

## SECTION 24. DEFINED CONTRIBUTION PENSION PLAN 401(k)

The Employers will contribute the amount specified in the Wage Schedules for each hour worked by each employee covered by this Agreement to the Sheet Metal Workers' Local 49 Defined Contribution Pension Plan. In addition to the Employers' contribution, the employees may elect to contribute up to the amount allowed by law per hour to the Defined Contribution Pension Plan as long as these contributions do not violate the terms of the Trust Agreement, the Defined Contribution Plan, the Internal Revenue Code, Internal Revenue Service regulations, the Employee Retirement Income Security Act, or Department of Labor regulations. The Local 49 Defined Contribution Plan Board of Trustees will determine contribution level options. Payment will be made on or before the 10th day of the succeeding month and will be paid by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

The Sheet Metal Workers' Local Union No.49 Defined Contribution Pension Plan Document and Declaration of Trust, established October 1, 1994, is hereby renewed without interruption and will be administered by a Joint Board of six (6) Trustees, composed of three (3) Trustees designated by the SMACCA of NM, and three (3) Trustees designated by the Union. The Joint Board of Trustees will have full authority and power to administer the plan, decide upon its benefits and rule with respect to all technical questions which arise.

The Parties to this Agreement will have the right, upon recommendation of the Joint Board of Trustees of the Sheet Metal Workers Local Union No.49 Defined Contribution Pension Plan to cancel the Agreement of any Employer found in violation of any provision of this Section and to take any other action it deems necessary, notwithstanding any other provisions of section to this Agreement to the contrary.

## SECTION 25. SASMI

(a) The Employer will make monthly payments of an amount equal to three percent (3%) of the base wage of each employee subject to this Agreement, to the National Stabilization Agreement of Sheet Metal Industry (SASMI) Trust Fund. Base wages, for purposes of this Agreement will mean the total of:

(1) Total wages paid to an employee by the Employer, which are reportable by the employee for federal tax purposes.

(2) Any and all contributions paid by such Employer on behalf of the employee to a National Pension Fund, 401(k) and the SMWIA Local 49 Family Health Plan. Payment will be made on or before the 10th day of the succeeding month and will be payment by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(b) The Employer agrees to adopt the National SASMI Trust as presently constituted and as the same may be amended from time to time, to be bound by all rules and regulations of the plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time, and to sign the Standard Participation Agreement prescribed by the Trustees as a condition of becoming a party to and participant in such Trust.

## SECTION 26. UNION CHECK OFF

(a) The Employer and the Union hereby agree that a system will be developed and maintained for the purpose of assisting the Union and its members in the collection of dues, initiation fees and other assessments from

employees all on a uniform basis and in accordance with the requirements of Section 302 of the National Labor Relations Act.

(b)    Payment will be made on or before the 10th day of the succeeding month and will be paid by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(c)    Local Union No. 49, in accordance with its Constitution and By-Laws, will exercise the prerogative of determining the amounts and schedule of deductions. It is understood and agreed that the amount to be deducted will from time to time change. The Employer does hereby agree to deduct any increased or decreased amounts not later than thirty-one (31) days (but not earlier than the beginning of the next Trust Fund reporting period) from receiving written notification from the Union that the amount to be deducted and payment has been changed.

(d)    The Employer agrees to deduct the appropriate amount for dues, assessment or service fees (excluding fines and initiation fees) from each week's pay of those employees who have authorized such deductions in writing, irrespective of whether they are Union members. Not later than the 10th day of each month, the Employer shall remit to the designated financial officers of SMART and the Local Union the amount of deductions made for the prior month, together with a list of employees and their social security numbers for whom such deductions have been made.

## ARTICLE IX
## REQUIRED TOOLS

Sheet metal journeymen, intermediate journeymen, apprentices, preapprentices and classified workers covered by this Agreement will provide for themselves necessary hand tools. The minimum required tool list is: **1- Tool Pouch, 1-Sheet Metal Hammer;** 1-Pair Bulldog Snips; **1-Pair of M-1 and M-2 Aviation Snips; 1 Flathead Screwdriver; 1-Tape Measure (16 ft minimum);** 1-Tri Square; **1-Pair Tongs;** 1-Pair Dividers; 1-Awl; 1-Plumb Bob; 1-Set of Allen Wrenches; **2-Pair Vise Grips; 1-Phillips Screwdriver; Ratcheting wrench or sockets, and Torpedo Level.**

Note: New 1st year apprentices, new preapprentices and classified workers are required to have the tools shown in the **bold text** above upon initial employment.  They will then be given six months to acquire the rest of the tools on the list.

## ARTICLE X
## GRIEVANCE PROCEDURES

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. GRIEVANCES OF THE EMPLOYER OR UNION

Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, will be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.  The SMACCA of NM or the Local Union, on its own initiative, may submit grievances for determination by the Local Joint Adjustment Board as provided in this Section.  The grievance procedure set forth in this Article applies only to labor-management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. GRIEVANCES NOT SETTLED IN SECTION 1

Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board will

meet promptly on date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board.  The Board will consist of representatives of the Union and of the SMACCA of NM and both sides will cast an equal number of votes at each meeting. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board will be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.


SECTION 3. GRIEVANCES NOT DISPOSED BECAUSE OF A DEADLOCK

Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board. * Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel will meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel will be final and binding.

| *All correspondence to the National Joint Adjustment Board shall be sent to the following address: National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA  20153-0956 or 4201 Lafayette Center Drive, Chantilly, VA  20151-1219 |
| --- |

In establishing the grievance procedure of the Standard Form of Union Agreement, it was the intent of SMART and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. to establish a method for resolving grievances permitting appeals for out-of-area Employers from the grievance arbitration procedures established for the territory in which work is performed.  An Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairman of the National Joint Adjustment Board.  Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which work is performed.

For the purposes of this Section, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, may also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel Hearing.

SECTION 4. GRIEVANCES NOT SETTLED AS PROVIDED IN SECTION 3

Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board.  Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board.   Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article.   The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board. *)

SECTION 5.  JOINT ADJUSTMENT BOARDS AND PANEL EMPOWERMENT

A Local Joint Adjustment Board, NAJB Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party, as they deem necessary and proper, including awards of damages or other compensation.

SECTION 6. NON-COMPLIANCE

In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law.  If the party seeking to enforce the award prevails in litigation, such party will be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts. Any party that unsuccessfully challenges the validity of an award in a legal proceeding shall also be liable for the costs and attorneys' fees of the opposing parties in the legal proceedings.

SECTION 7. FAILURE TO EXERCISE THE RIGHT OF APPEAL

Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There will be no cessation of work by strike or lockout during the pendancy of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board will be final and binding.

SECTION 8. FAILURE TO NEGOTIATE A RENEWAL

In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a)     Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the Union representative(s) or of the Employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairmen of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such Panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairmen of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co-Chairmen of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representative to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairmen of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area.  Such Subcommittees will function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board will be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b)    Any application to the National Joint Adjustment Board will be upon forms prepared for that purpose subject to any changes, which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c)    The National Joint Adjustment Board shall have the right to establish time limits, which must be met with respect to each and every step or procedure, contained in this Section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, facsimile or telephone notification.

(d)    Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

## SECTION 9. EMPLOYER NOT CONTRIBUTING TO THE INDUSTRY FUND

Any Employer not contributing to the Industry Fund of the United States (IFUS) will be assessed a fee to be determined periodically by the Administrator of the National Joint Adjustment Board. Proceeds will be used to reimburse IFUS for costs of arbitration under the provisions of Article X.

## SECTION 10. SERVICES OF THE NATIONAL JOINT ADJUSTMENT BOARD

In addition to the settlement of disputes provided in Sections 1 through 8 of this Article, either party may invoke the services of the National Joint Adjustment Board to resolve disputes over the initial establishment of terms for specialty addenda, if the provisions of Article X have been adopted in their entirety, and without modification.

Such a dispute may be submitted upon the request of either party any time that local negotiations for such an agreement have been unsuccessful. Such a dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the Board. The unanimous decision of said Board shall be final and binding upon the parties. There shall be no strike or lockout over such a dispute.

## SECTION 11. CONDUCTING DISPUTE RESOLUTION ACTIVITIES

In administering and conducting dispute resolution activities under the arbitration procedures of the Standard Form of Union Agreement, the National Joint Adjustment Board, the SMART, the Sheet Metal and Air Conditioning Contractors' National Association, Inc., and their representatives, are functioning as arbitrators and not as the representative of any entity that is party to such dispute. Therefore, they shall enjoy all of the rights, privileges, and immunities afforded to arbitrators under applicable law.

---

*All correspondence to the National Joint Adjustment Board shall be sent to the following address:
National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA  20153-0956
or 4201 Lafayette Center Drive, Chantilly, VA  20151-1219.

**ARTICLE XI**
**APPRENTICE PROGRAM**

SECTION 1.  JOINT APPRENTICE AND TRAINING

(a)    To meet the needs and requirements of the trade, all duly qualified apprentice and preapprentice sheet metal workers and apprentice and preapprentice Service & Controls technicians will be under the supervision and control of a Joint Apprenticeship and Training Committee composed of eight (8) members, four (4) of whom will be selected by the SMACCA of NM and four (4) by the Union. Said Joint Apprenticeship and Training Committee will formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement to govern eligibility, registration, education, transfer, wages, hours and working conditions of duly qualified apprentices and preapprentices. Said rules and regulations, when formulated and adopted by the parties hereto, will be recognized as part of this Agreement.

(b)    The Joint Apprenticeship and Training Committee designated herein will serve for the life of this Agreement except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party. It is hereby mutually agreed by both parties hereto that they will individually and collectively cooperate to the extent that duly qualified apprentices and preapprentices be given every opportunity to secure proper technical and practical education and experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

   1.    The parties will review the needs for specialized and skills-upgrade training and cooperate to establish necessary programs, which will then be supervised by the Joint Apprenticeship Training Committee.

(c)    It is the understanding of the parties to this Agreement that the funds contributed by signatory Employers to the International Training Institute (ITI) and any Local Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeymen who will be employed by Employers in the Sheet Metal Industry not signatory to a Collective Bargaining Agreement providing for contributions to the ITI and a Local JATC. Therefore the trustees of the ITI and Local JATC will adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training will include the reasonable value of all ITI and Local JATC materials, facilities and personnel utilized in training.  If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC will be prohibited from utilizing Fund materials and programs.

(d)    All applicants for apprenticeship will serve a term of apprenticeship as established by the Joint Apprenticeship and Training Committee.

(e)    The parties will establish on a local basis the SMART Youth-to-Youth program (the program) and the procedures to enable all apprentices to participate in the program. The activities of the program that deal with organizing and other traditional union activities shall be funded by the Local Union through a check off in compliance with the provisions of Section 302(c) of the Labor-Management Relations Act of 1947.

(f)    The parties agree that concentrated apprenticeship training is preferable to night-schooling and urge the Joint Apprenticeship and Training Committee to implement concentrated training during the term of this Agreement.

   1.    The parties recognize that previous experience in the industry can be considered when evaluating and placing sheet metal workers into the apprenticeship program and the JATC shall work cooperatively with the parties in establishing standards for placing employees into the program.

(g)    The parties agree that career-long skill upgrade training is necessary for an effective workforce and agree to undertake those measures available to them to encourage continuing training for sheet metal journeymen.

(h)     A graduated scale for apprentices will be established and maintained based on increments described in Wages Schedule. Advancement of apprentices will be governed by the provisions of the Joint Apprentices and Training Committee.

(i)     Contractor will pay $250.00 week subsistence to apprentices who complete the 40 hours of concentrated training and fulfills all Obligations. Local 49 training coordinator will notify the contractors by email of the apprentices that are to receive subsistence, and payment will be made at next regular payroll.

SECTION 2.  PREAPPRENTICES

Preapprentices may be recruited by any source available and can pursue entry into the apprentice program by completing the requirements set forth by the Joint Apprenticeship and Training Committee. The Joint Apprenticeship and Training Committee will evaluate the qualifications of preapprentices for such openings during the first year of employment. Preapprentices will not be retained beyond one year unless they have not met the requirements for entry into the apprenticeship program or by their own choice to remain as a preapprentice. The wage scale for preapprentices will be as described in the Wage Schedule. All Preapprentices must meet the membership requirements of Article V, Section 1(a).

SECTION 3.  STANDARDS OF APPRENTICESHIP AND TRAINING

This program has as its purpose the establishment of high standards of apprenticeship training whereby the apprentice, preapprentice, their Employer and the Union will have before them a definite program to enable the apprentice/ preapprentice to acquire the necessary manual skill and the required technical knowledge for mastery of the trade to which they are indentured. The following standards for the development of sheet metal apprentices/preapprentices have been prepared by the SMACCA of NM and SMART Local Union 49.

(a)     Purpose:  The purpose of these apprenticeship standards is to encourage more careful selection of young people coming into the trade; also to assist in providing training that will equip them for profitable employment and citizenship, and to further the assurance to Employers of proficient workmen to the end that the public may receive the best possible service.

(b)     Contributions:  It is agreed that a contribution by the Employer of the amount as specified in the Wage Schedule will be paid to the Sheet Metal Workers' Joint Apprenticeship and Training Committee for each hour worked.

(c)     Administration:  This is to be used to administer an adequate Joint Apprenticeship Training Program and for all supplies and other expenditures necessary and incidental to the Apprenticeship Training Program, all by establishment and approval of the Joint Apprenticeship and Training Committee.

(d)     Standards:  The Standards of Apprenticeship formulated by the Sheet Metal Workers' Joint Apprenticeship and Training Committee are hereby incorporated by reference, the same as if it were expressly set forth and became a part of this Agreement. These standards may be modified or altered by that Joint Committee.

(e)     Trust:  The Trust Agreement negotiated by and between the SMACCA of NM and SMART Local Union No. 49 and all amendments thereto during the terms hereof will become binding on all parties bound by this Collective Bargaining Agreement. In this connection, said Trust Agreement will be deemed incorporated herein by reference the same as if it were expressly set forth.

## ARTICLE XII
## STEWARDS

SECTION 1. STEWARDS/JOBSITE VISITATION

(a)     The Union representative will submit to the Employer in writing the name of an employee appointed shop or job steward prior to the effective date of the appointment. The Employer agrees that the designated shop or job steward will be allowed a reasonable amount of time, with pay, to perform the duties as a shop or job steward.

(b)     In case of contemplated layoff, seniority or designated foreman status being considered, the shop or job steward will be the last to be laid off and written notice will be given by the Employer to the Union of any contemplated layoff of a shop or job steward, including the cause of such layoff.

(c)     A shop or job steward will only be laid off for just cause. In the event of a contemplated layoff involving a steward, written notice will be given to the Union not less than twenty-four (24) hours and not more than seventy-two (72) hours prior to such layoff.

SECTION 2. JOBSITE VISITATION

The Union will notify management of its intention to visit shops and jobsites prior to visits. Nothing in this section is deemed to prevent the Union from performing its duty of fair representation of its members.

## ARTICLE XIII
## FOREMEN

SECTION 1. DESIGNATION

All foremen will be members of SMART. Each Employer or shop will have at least one (1) designated foreman. Any job having a journeyman sheet metal worker five (5) consecutive days or having three (3) journeymen sheet metal workers at any one time will have a designated foreman. Journeymen who become eligible under the provisions of this Article for foreman's pay will be paid at the appropriate rate for the entire pay period in which they became eligible.

SECTION 2. PREMIUM PAY

Working foreman will receive premium pay above the minimum rates for journeymen as set forth in the Wage Schedule of this Agreement as follows:

(a)     Working (Low) foremen with five (5) or fewer journeymen working under him.

(b)     Working (High) foreman with six (6) or more journeymen working under him.

(c)     Designated General Foremen will receive wage increase as per wage schedule agreement.

NOTE:  THE MAJOR GOAL OF A FOREMAN IS TO MANAGE THE PRODUCTION OF THE EMPLOYER EITHER IN THE SHOP OR THE FIELD, IN AN EFFECTIVE AND TIMELY MANNER, TO ACHIEVE THE HIGHEST POSSIBLE PROFIT THROUGH QUALITY WORK AND EXPERT CRAFTSMANSHIP.

## ARTICLE XIV
## WORKING OWNERS

<u>SECTION 1</u>.  WORKING OWNERS

(a)   Provision is hereby made, excepting the provisions of Article III of this Agreement, for the privilege of allowing one (1) bona fide owner who is not a member of SMART Local Union No. 49 and who furnishes proof of at least ten percent (10%) bona fide ownership to perform work designated in Article I, Section 1.

(b)   Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.  However, it will be permissible for an owner-member to be the journeyman sheet metal worker.

## ARTICLE XV
## EMPLOYER EQUIPMENT, TOOLS AND TRUCKS

The Union will cooperate with the Employer to see that the equipment, tools and trucks of the Employer are kept in the best possible condition. The Employer will furnish such materials as are necessary to facilitate this purpose. Negligence or misuse of the Employer's equipment, tools or trucks will be referred to the Union for appropriate action.  If it is determined by the LJAB or NJAB that the Employee through negligence or misuse damaged the Employer's equipment, tools, or trucks, the Employee will reimburse the Employer for the actual cost of the repair or replacement.

## ARTICLE XVI
## PASSES AND SECURITY CLEARANCES

The Employer agrees that passes, special passes and security clearances required on projects will not be a condition of employment provided that the employee is not refused such passes and clearances by the governing agency.  The Employer agrees to pay for all necessary loss of time by these employees in obtaining such passes and clearances and the loss of time in returning such passes when required.  **Employees must follow company return policy for all badges and or passes issued to them while employed with the employer.**

## ARTICLE XVII
## SAFETY TRAINING/CONTINUING EDUCATION

<u>SECTION 1</u>.  OSHA

The Occupational Safety and Health Act of 1970, Parts 1910 and 1926 - Safety and Health Regulations for Construction and amendments thereto by any Federal or State of New Mexico enforcement agency is made a part of this Agreement by reference. It is the obligation of the Employer and the Union to be informed of the rules and regulations and amendments thereto.

<u>SECTION 2</u>.  SAFETY EQUIPMENT

The Employer is required to furnish and the employee will use all safety equipment necessary under this Article.  The employee is responsible to furnish and use safety shoes.

SECTION 3. SAFETY TRAINING

Sheet metal workers shall complete OSHA 10/OSHA 30 training, as well as any mandatory refresher course, as a condition of employment in the sheet metal industry. Such training shall be completed on the employee's time.

The parties to this Agreement shall take appropriate steps to provide that the cost of any materials used in such training, as well as the costs associated with providing instruction, shall be paid for by the Local Joint Apprenticeship and Training Fund.

SECTION 4. CONTINUING EDUCATION

Employers may provide continuing education for Construction Management and Administrative Training for "designated" journeymen and foremen. Journeymen will be required to abide by requirements of the state of New Mexico when renewing their certificate of competence (NMJSM). Employees will be invited (in writing) by the Employer to attend training sessions.

It is understood that only designated journeymen and foremen will be paid for attending training classes required by the Employer. At the discretion of each Employer, others may be allowed to voluntarily attend on their own time.

## ARTICLE XVIII
## PICK UP TIME

The foreman will designate adequate time to pick up tools.

## ARTICLE XIX
## CHANGE SHACKS

The Employer will provide change shacks or similar facilities on all industrial jobs.

## ARTICLE XX
## COMPOSITE CREWS

When working in a composite crew with other crafts on industrial jobs, sheet metal workers will receive wages that match the highest total wage package, including hazard pay, travel time, mileage, zone or subsistence.

## ARTICLE XXI
## LABOR COMMITTEE

SECTION 1. LABOR COMMITTEE

On any item, whether or not addressed by this Agreement, affecting the sheet metal industry, the Local Union Labor Committee and the Management Labor Committee will meet, discuss, and attempt to resolve the matter and, if resolved, will issue a written decision promptly.

SECTION 2.  LABOR-MANAGEMENT COMMITTEE

SMACCA of NM and the SMART are committed to promoting productive and cooperative labor-management relations. In furtherance of this goal, the SMACCA of NM and SMART Local Union agree to establish a labor-management committee, which shall meet on a regular basis to discuss industry issues of mutual concern.  Such committees will strive to improve communications, understand and respond to industry direction and trends, and resolve common issues collaboratively.

## ARTICLE XXII
### WORK RULES, OBLIGATIONS AND RESPONSIBILITIES

Local Union and Employers will maintain the highest degree of communication and cooperation to assure the success of the industry.

Foremen will be responsible for the coordination and direction of the job or jobs, including the leadership of the journeymen, intermediate journeyman, apprentices, preapprentices, classified workers and material handlers and to require and maintain the highest standards of the industry.
Stewards will be responsible to assist in any way possible to assure the quality and productivity for the success of the job.

Journeymen and intermediate journeymen will perform the duties of the trade, which are assigned to them by the Employer or the foreman in the most productive manner and require and maintain the highest standards of the industry.

Apprentices, preapprentices, classified workers and material handlers will perform diligently and faithfully the work of the trade and other duties as assigned by the Employer, foreman or journeymen.

## ARTICLE XXIII
### REST BREAKS

SECTION 1.  REST BREAKS

(a)     This Article provides for the entitlement of one rest break per workday for all employees covered by this Agreement.
(b)     The rest break will be a maximum of ten (10) minute duration.

(c)     For the purpose of this Agreement, the rest break will be considered time worked.

(d)     The rest break will not be taken in circumstances where it is prohibited in contract form by an owner or general contractor and observed by all trades on said project.

## ARTICLE XXIV
### PREDETERMINED WAGE INFORMATION

SECTION 1.  PREDETERMINED WAGE INFORMATION

(a)     Upon written request by the Union, the Employer will furnish to the Union certain information in writing on specific jobs regarding the type of work performed, number of hours worked, and the wage rates paid to journeymen and apprentices.

(b)     Upon request by the Employer, the Union will furnish proof that such information has been requested by a bona fide government agency or the SMART and that the purpose of the request is for future predetermination of wage rates on similar work.

## ARTICLE XXV
## SEPARATE AGREEMENTS AND ADDENDA

This Agreement authorizes the negotiation of separate Agreements or addenda between Local Union No. 49 and any Employer or entity signatory hereto. Such Agreements will, however, be in writing and will be available through the SMACCA of NM or the SMART Local Union 49 offices.

## ARTICLE XXVI
## REPAIR OF DEFECTIVE AND/OR INFERIOR WORK

Any defective and/or inferior work installed through the fault or neglect of the journeyman will be corrected by the journeyman at no labor cost to the Employer, provided, plans and specifications or a working sketch has been furnished to the journeyman or the work was installed contrary to the applicable codes. Corrections will be made as soon as possible in order not to delay the progress of the job. This determination and the final decision will be made by the Union.

## ARTICLE XXVII
## TARGETED JOBS/MARKET ADVANTAGE

Additional relief may be granted by the Business Manager on any job with serious merit shop competition. On such targeted jobs, the Union will notify the SMACCA of NM in advance of bid opening of the terms of said targeted job. It will be the responsibility of the each individual Employer to obtain this information from either the SMACCA of NM or the Local Union. Such terms will be confirmed in writing to the SMACCA of NM and the bid results will be submitted to the Local Union.

## ARTICLE XXVIII
## EFFECTIVE AND EXPIRATION DATES

SECTION 1. TERM

This Agreement will become effective on the 1st day of April 2013 and remain in full force and effect until the 31st day of March 2015 and will continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement will continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date contained in this Section will not be effective in the event proceedings under Article X, Section 8, are not completed prior to that date. In that event, this Agreement will continue in full force and effect until modified by order of the National Joint Adjustment Board, or until the procedures under Article X, Section 8, have been otherwise completed.

In the event Federal Davis-Bacon or state predetermined wage scale should be discontinued, this Agreement will be reopened for purposes of wage adjustment.

SECTION 2.  LEGALITY

If, pursuant to federal or state law, any provision of this Agreement will be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement will remain in full force and effect.

In applying the terms of this Agreement and in fulfilling their obligations there under, neither the Employer nor the Union will discriminate in any manner prohibited by law.


SECTION 3.  REOPENING

Notwithstanding any other provision of this Article or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement will be adopted by the National Joint Labor Relations Adjustment Committee, any party to this Agreement, upon the service of notice to all other parties hereto, will have this Agreement reopened thirty (30) days thereafter for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof.  There will be no strike or lockout over this issue.


SECTION 4.  REPUDIATION

Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement or during the term of any extension, modification or amendment to this Agreement.

SECTION 5. AUTHORIZATION

By execution of this Agreement, the Employer authorizes the Sheet Metal & Air Conditioning Contractors' Association of New Mexico, to act as collective bargaining representative for all matters relating to this Agreement unless this authorization is withdrawn by written notice to the Association and the Union at least 150 days prior to the then current expiration dates of the Agreement.

In witness whereof, the parties hereto affix their signatures and seal this _29_ day of _MARCH_____, 2013

| Sheet Metal & Air Conditioning Contractors' Association of New Mexico | Sheet Metal Air and Rail Transportation Local Union #49 |
|---|---|
| Negotiation Committee Co-Chairman<br>Kevin Yearout | Negotiation Committee Co-Chairman<br>Vince Alvarado |
| Committee Member<br>Keith Wilson | Committee Member<br>Jerry Arms |
| Committee Member<br>Tony Kocurek | Committee Member<br>Jaime Lugo |
| Committee Member Recording Secretary<br>David McCoy | Committee Member Recording Secretary<br>Richard Espinosa |

In witness whereof, the parties hereto affix their signatures and seal this _____ day of _____ 20 ____

_____ Date: _____    _____ Date: _____
**Independent Employer**                      **SMART LU#49 Business Manager**

The Standard Form of Union Agreement is a recommended contract form that is revised from time to time by the SMART and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. In establishing such a recommended contract form, neither the Sheet Metal Workers' International Association, nor the Sheet Metal and Air Conditioning Contractors' National Association Inc. has acted as the bargaining representative of any entity that may adopt all or part of the language of the Standard Form of Union Agreement. Furthermore, neither the SMART nor the Sheet Metal and Air Conditioning Contractors' National Association, Inc., shall be deemed to be a party to any such collective bargaining agreement including such language.

Contractor Name: _____

Contact Name(s): _____

Physical Address: _____

City: _____ State: _____ Zip: _____

Phone: _____ Fax: _____ E-mail _____

28

INDEX

Air Pollution Control Systems ........................................................................................7
Apprentice Program .................................................................................................3, 20
Apprentices ..............................................................................................................3,20
Authorization ...............................................................................................................28
Change Shacks ............................................................................................................24
Classified Workers ........................................................................................................3
Composite Crews .........................................................................................................24
Conditions .....................................................................................................................3
Continuing Education ..................................................................................................24
Contractual Benefits .....................................................................................................8
Contributions ...............................................................................................................10
Defined Contribution Pension Plan ............................................................................15
Dispatch .........................................................................................................................5
Effective and Expiration Dates ...................................................................................26
Employer's Equipment .................................................................................................23
Employment ...................................................................................................................2
Family Health Plan ......................................................................................................13
Foremen .......................................................................................................................22
Grievance Procedures ..................................................................................................16
Higher Wage Scale ........................................................................................................7
Higher Wage Scale ........................................................................................................7
Hiring Procedure ...........................................................................................................3
Hiring .............................................................................................................................3
Holidays .........................................................................................................................5
Industrial Zone ..............................................................................................................6
Intermediate Journeyman ..............................................................................................3
Intermediate Journeymen ..............................................................................................3
International Training Institute .....................................................................................11
Joint Apprenticeship and Training ..............................................................................20
Joint Hiring Committee .................................................................................................3
Journeyman ....................................................................................................................3
Jurisdiction .....................................................................................................................1
Labor Committee/Management ....................................................................................24
Legality ........................................................................................................................27
Local (SMACCA of NM) Industry Fund ....................................................................10
Los Alamos Zone (Zone 3) ...........................................................................................6
Manufactured Items .......................................................................................................7
Material Handlers ..........................................................................................................4
Membership (Union) Requirement ...............................................................................3
Monthly Reports ..........................................................................................................12
National Industry Fund ..................................................................................................9
National Pension Fund .................................................................................................13
NEMI ...........................................................................................................................10
Obligation to Furnish Sheet Metal Workers .................................................................2
OSHA ...........................................................................................................................23
Overtime .........................................................................................................................5
Passes ...........................................................................................................................23
Payment of Trust Funds ..............................................................................................12
Payment of Wages /Electronic Transfer ........................................................................8

Pick Up Time ..................................................................................................24
Preapprentices ...............................................................................................21
Predetermined Wage Information .................................................................25
Prefabrication ..................................................................................................2
Preface ............................................................................................................1
Project Agreements / Maintenance Agreement (Contributions) ..................10
Rate of Pay .......................................................................................................4
Ratios ...............................................................................................................2
Recognition ......................................................................................................3
Reopening ......................................................................................................26
Repair of Defective and/or Inferior Work ....................................................26
Report Due Dates and Penalties ....................................................................12
Repudiation ....................................................................................................26
Rest Breaks ....................................................................................................25
Safety Equipment ..........................................................................................23
Safety Training .........................................................................................23,24
SASMI ............................................................................................................15
Scope of Work .................................................................................................1
Security Requirements ..................................................................................12
Separate Agreements and Addenda ...............................................................26
Service Fee Provision .......................................................................................4
Shift Work ........................................................................................................4
Show Up Time .................................................................................................9
Signature Page ...............................................................................................27
SMOHI ...........................................................................................................10
Standards of Apprenticeship and Training ...................................................21
Stewards/Jobsite Visitation ...........................................................................22
Subcontracting .................................................................................................2
Subsistence .......................................................................................................4
Substance Abuse / Drug Testing ......................................................................4
Targeted Jobs / Market Advantage ...............................................................26
Termination or Discharge ................................................................................9
Territorial Jurisdiction .....................................................................................7
Tools Required by Employee .........................................................................16
Travel ...............................................................................................................6
Trust Funds ....................................................................................................11
Union Check Off ............................................................................................15
Union Obligation .............................................................................................2
Vacation Savings Deduction ..........................................................................14
Wage Schedules ....................................................................................Appendix
Wages ...............................................................................................................7
Welfare Benefits ..............................................................................................8
Work Day .........................................................................................................4
Work Jurisdiction ............................................................................................7
Work Outside This Jurisdiction .......................................................................8
Work Preservation ...........................................................................................2
Work Rules, Obligations and Responsibilities .............................................25
Working Owners .............................................................................................23
Zone 1. Zone 2. Zone 3. ..................................................................................6

**April 1, 2013**

## Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 27.78 | $ 28.78 | $ 29.78 |
| Family Health Plan | $ 5.67 | $ 5.67 | $ 5.67 |
| National Pension | $ 6.89 | $ 6.89 | $ 6.89 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.11 | $ 0.11 | $ 0.11 |
| Local 49 DCP (401-K) | $ 0.50 | $ 0.50 | $ 0.50 |
| SASMI | $ 1.23 | $ 1.26 | $ 1.29 |
| Total Package | $ 43.15 | $ 44.18 | $ 45.21 |
| Union Check Off | $ 1.33 | $ 1.38 | $ 1.42 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

## Apprentice

| | Zone 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | |
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% |
| | 1.0 | 1.5 | 2.0 | 2.5 | 3.0 | 3.5 | 4.0 | 4.5 |
| Base Rate of Pay | $ 13.89 | $ 15.28 | $ 16.67 | $ 18.06 | $ 19.45 | $ 20.84 | $ 22.22 | $ 23.61 |
| Family Health Plan | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 |
| National Pension | $ 3.45 | $ 3.79 | $ 4.13 | $ 4.48 | $ 4.82 | $ 5.17 | $ 5.51 | $ 5.86 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.11 | $ 0.11 | $ 0.11 | $ 0.11 | $ 0.11 | $ 0.11 | $ 0.11 | $ 0.11 |
| Local 49 DCP (401-K) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| SASMI | $ 0.69 | $ 0.74 | $ 0.79 | $ 0.85 | $ 0.90 | $ 0.95 | $ 1.00 | $ 1.05 |
| Total Package | $ 24.78 | $ 26.56 | $ 28.34 | $ 30.14 | $ 31.92 | $ 33.71 | $ 35.48 | $ 37.27 |
| Union Check Off | $ 0.71 | $ 0.77 | $ 0.83 | $ 0.89 | $ 0.96 | $ 1.02 | $ 1.08 | $ 1.14 |
| Vacation Withholding | $ - | $ - | $ - | $ - | $ 1.00 | $ 1.00 | $ 2.00 | $ 2.00 |

## Preapprentice

| | 40.6% |
|---|---|
| Base Rate of Pay | $ 11.25 |
| Family Health Plan | $ - |
| National Pension | $ 0.34 |
| Local Training | $ 0.03 |
| National Industry | $ 0.11 |
| Total Package | $ 11.73 |
| Union Check Off | $ 0.59 |

## Classified Worker

| | 35% only | Step 1 | Step 2 | Step 3 | Step 4 |
|---|---|---|---|---|---|
| | | 35% | 36% | 43% | 52% |
| Base Rate of Pay | | $ 9.72 | $ 10.00 | $ 11.95 | $ 14.45 |
| Family Health Plan | | $ - | $ - | $ 5.67 | $ 5.67 |
| National Pension | .15 | $ 2.41 | $ 2.48 | $ 2.96 | $ 3.58 |
| Local Training | | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Industry | .04 | $ 0.11 | $ 0.11 | $ 0.11 | $ 0.11 |
| Total Package | .19 | $ 12.27 | $ 12.62 | $ 20.72 | $ 23.84 |
| Union Check Off | | $ 0.52 | $ 0.53 | $ 0.62 | $ 0.73 |

**Experience in the SM Industry for Classified Worker Step Determination**

Step 1: No Experience
Step 2: After 500 Hours Worked
Step 3: After 2000 Hours Worked
Step 4: After 6000 Hours Worked

## Material Handler

| | 1st 500 | 2nd 500 | Over 1000 |
|---|---|---|---|
| | 30% | 35% | 40% |
| Base Rate of Pay | $ 8.33 | $ 9.72 | $ 11.11 |
| Family Health Plan | $ - | $ - | $ 5.67 |
| National Industry | $ 0.11 | $ 0.11 | $ 0.11 |
| Total Package | $ 8.44 | $ 9.83 | $ 16.89 |
| Union Check Off | $ 0.46 | $ 0.52 | $ 0.58 |

## Foreman Premium

| | |
|---|---|
| Low Foreman  (5 or fewer Journeymen) | $1.50 |
| High Foreman  (6 or more Journeymen) | $2.25 |
| Designated General Foreman | $2.75 |

## Intermediate Journeyman
### April 1, 2012

| | 82% Rate |
|---|---|
| Base Rate of Pay | $ 22.78 |
| Family Health Plan | $ 5.67 |
| National Pension | $ 5.65 |
| SMOHIT | $ 0.02 |
| NEMI | $ 0.03 |
| National Training (ITI) | $ 0.12 |
| Local Training | $ 0.42 |
| Local Industry | $ 0.38 |
| National Industry | $ 0.11 |
| Local 49 DCP (401-K) | $ 0.41 |
| SASMI | $ 1.04 |
| Total Package | $ 36.63 |
| Union Check Off | $ 1.11 |
| Vacation Withholding | $ 2.00 |

1. Successfully completed a sheet metal apprenticeship program registered with the Bureau of Apprenticeship & training or the State Apprenticeship Council but do not have a current New Mexico Certificate of Competence (NMJSM).

2. Have four (4) years and six-thousand (6,000) hours of actual practical working experience for a licensed contractor but do not have a current New Mexico Certificate of Competence  (NMJSM).  Organized members may become journeymen by obtaining 500 hours under this agreement and obtaining a current New Mexico Certificate of Competence (NMJSM).

3. Current members of the SMWIA who transfer into the local union from other areas will be elevated to journeymen status once they obtain their New Mexico Certificate of Competence (NMJSM).

## if total Industry Liability reported hours equal or exceed 500,000 Hours - April 1, 2014

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 28.28 | $ 29.28 | $ 30.28 |
| Family Health Plan | $ 5.67 | $ 5.67 | $ 5.67 |
| National Pension | $ 7.37 | $ 7.37 | $ 7.37 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 |
| Local 49 DCP (401-K) | $ 0.50 | $ 0.50 | $ 0.50 |
| SASMI | $ 1.25 | $ 1.28 | $ 1.31 |
| Total Package | $ 44.16 | $ 45.19 | $ 46.22 |
| Union Check Off | $ 1.35 | $ 1.40 | $ 1.44 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice — Zone 1

| | 1st Year 50% 1.0 | 1st Year 55% 1.5 | 2nd Year 60% 2.0 | 2nd Year 65% 2.5 | 3rd Year 70% 3.0 | 3rd Year 75% 3.5 | 4th Year 80% 4.0 | 4th Year 85% 4.5 |
|---|---|---|---|---|---|---|---|---|
| Base Rate of Pay | $ 14.14 | $ 15.55 | $ 16.97 | $ 18.38 | $ 19.80 | $ 21.21 | $ 22.62 | $ 24.04 |
| Family Health Plan | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 |
| National Pension | $ 3.69 | $ 4.05 | $ 4.42 | $ 4.79 | $ 5.16 | $ 5.53 | $ 5.90 | $ 6.26 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local 49 DCP (401-K) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| SASMI | $ 0.71 | $ 0.76 | $ 0.81 | $ 0.87 | $ 0.92 | $ 0.97 | $ 1.03 | $ 1.08 |
| Total Package | $ 25.30 | $ 27.12 | $ 28.96 | $ 30.80 | $ 32.64 | $ 34.47 | $ 36.31 | $ 38.14 |
| Union Check Off | $ 0.72 | $ 0.78 | $ 0.84 | $ 0.91 | $ 0.97 | $ 1.03 | $ 1.10 | $ 1.16 |
| Vacation Withholding | | | | | $ 1.00 | $ 1.00 | $ 2.00 | $ 2.00 |

### Preapprentice

| | 40.5% |
|---|---|
| Base Rate of Pay | $ 11.45 |
| Family Health Plan | $ - |
| National Pension | $ 0.37 |
| Local Training | $ 0.03 |
| National Industry | $ 0.12 |
| Total Package | $ 11.97 |
| Union Check Off | $ 0.60 |

### Classified Worker

| | Step 1 35% only 36% | Step 2 36% | Step 3 43% | Step 4 52% |
|---|---|---|---|---|
| Base Rate of Pay | $ 9.90 | $ 10.18 | $ 12.16 | $ 14.71 |
| Family Health Plan | $ - | $ - | $ 5.67 | $ 5.67 |
| National Pension | $ 2.58 | $ 2.65 | $ 3.17 | $ 3.83 |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Total Package | $ 12.63 | $ 12.98 | $ 21.15 | $ 24.36 |
| Union Check Off | $ 0.53 | $ 0.54 | $ 0.63 | $ 0.74 |

### Experience in the SM Industry

for Classified Worker Step Determination

Step 1: No Experience
Step 2: After 500 Hours Worked
Step 3: After 2000 Hours Worked
Step 4: After 6000 Hours Worked

### Material Handler

| | 1st 500 30% | 2nd 500 35% | Over 1000 40% |
|---|---|---|---|
| Base Rate of Pay | $ 8.48 | $ 9.90 | $ 11.31 |
| Family Health Plan | $ - | $ - | $ 5.67 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 |
| Total Package | $ 8.60 | $ 10.02 | $ 17.10 |
| Union Check Off | $ 0.46 | $ 0.53 | $ 0.59 |

### Foreman Premium

| | |
|---|---|
| Low Foreman ( 5 or fewer Journeymen) | $1.50 |
| High Foreman ( 6 or more Journeymen) | $2.25 |
| Designated General Foreman | $2.75 |

### Intermediate Journeyman
### April 1, 2012

| | 82% Rate |
|---|---|
| Base Rate of Pay | $ 23.19 |
| Family Health Plan | $ 5.67 |
| National Pension | $ 6.04 |
| SMOHIT | $ 0.02 |
| NEMI | $ 0.03 |
| National Training (ITI) | $ 0.12 |
| Local Training | $ 0.42 |
| Local Industry | $ 0.38 |
| National Industry | $ 0.12 |
| Local 49 DCP (401-K) | $ 0.41 |
| SASMI | $ 1.06 |
| Total Package | $ 37.46 |
| Union Check Off | $ 1.12 |
| Vacation Withholding | $ 2.00 |

1. Successfully completed a sheet metal apprenticeship program registered with the Bureau of Apprenticeship & training or the State Apprenticeship Council but do not have a current New Mexico Certificate of Competence (NMJSM).

2. Have four (4) years and six-thousand (6,000) hours of actual practical working experience for a licensed contractor but do not have a current New Mexico Certificate of Competence (NMJSM). Organized members may become journeymen by obtaining 500 hours under this agreement and obtaining a current New Mexico Certificate of Competence (NMJSM).

3. Current members of the SMWIA who transfer into the local union from other areas will be elevated to journeymen status once they obtain their New Mexico Certificate of Competence (NMJSM).

## if total Industry Liability Reported hours do not exceed 500,000 Hours - April 1, 2014

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 27.78 | $ 28.78 | $ 29.78 |
| Family Health Plan | $ 5.67 | $ 5.67 | $ 5.67 |
| National Pension | $ 7.37 | $ 7.37 | $ 7.37 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 |
| Local 49 DCP (401-K) | $ 0.50 | $ 0.50 | $ 0.50 |
| SASMI | $ 1.24 | $ 1.27 | $ 1.30 |
| Total Package | $ 43.65 | $ 44.68 | $ 45.71 |
| Union Check Off | $ 1.33 | $ 1.38 | $ 1.42 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice — Zone 1

| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | |
|---|---|---|---|---|---|---|---|---|
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% |
| | 1.0 | 1.5 | 2.0 | 2.5 | 3.0 | 3.5 | 4.0 | 4.5 |
| Base Rate of Pay | $ 13.89 | $ 15.28 | $ 16.67 | $ 18.06 | $ 19.45 | $ 20.84 | $ 22.22 | $ 23.61 |
| Family Health Plan | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 | $ 5.67 |
| National Pension | $ 3.69 | $ 4.05 | $ 4.42 | $ 4.79 | $ 5.16 | $ 5.53 | $ 5.90 | $ 6.26 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local 49 DCP (401-K) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| SASMI | $ 0.70 | $ 0.75 | $ 0.80 | $ 0.86 | $ 0.91 | $ 0.96 | $ 1.01 | $ 1.07 |
| Total Package | $ 25.04 | $ 26.84 | $ 28.65 | $ 30.47 | $ 32.28 | $ 34.09 | $ 35.89 | $ 37.70 |
| Union Check Off | $ 0.71 | $ 0.77 | $ 0.83 | $ 0.89 | $ 0.96 | $ 1.02 | $ 1.08 | $ 1.14 |
| Vacation Withholding | $ - | $ - | $ - | $ - | $ 1.00 | $ 1.00 | $ 2.00 | $ 2.00 |

### Preapprentice

| | 40.6% |
|---|---|
| Base Rate of Pay | $ 11.25 |
| Family Health Plan | $ - |
| National Pension | $ 0.37 |
| Local Training | $ 0.03 |
| National Industry | $ 0.12 |
| Total Package | $ 11.77 |
| Union Check Off | $ 0.59 |

### Classified Worker

| 35% only | Step 1 35% | Step 2 36% | Step 3 43% | Step 4 52% |
|---|---|---|---|---|
| Base Rate of Pay | $ 9.72 | $ 10.00 | $ 11.95 | $ 14.45 |
| Family Health Plan | $ - | $ - | $ 5.67 | $ 5.67 |
| National Pension .32 | $ 2.58 | $ 2.65 | $ 3.17 | $ 3.83 |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Industry .01 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Total Package .33 | $ 12.45 | $ 12.80 | $ 20.93 | $ 24.10 |
| Union Check Off | $ 0.52 | $ 0.53 | $ 0.62 | $ 0.73 |

**Experience in the SM Industry**

for Classified Worker Step Determination
Step 1: No Experience
Step 2: After 500 Hours Worked
Step 3: After 2000 Hours Worked
Step 4: After 6000 Hours Worked

### Material Handler

| | 1st 500 30% | 2nd 500 35% | Over 1000 40% |
|---|---|---|---|
| Base Rate of Pay | $ 8.33 | $ 9.72 | $ 11.11 |
| Family Health Plan | $ - | $ - | $ 5.67 |
| National Industry | $ 0.12 | $ 0.12 | $ 0.12 |
| Total Package | $ 8.45 | $ 9.84 | $ 16.90 |
| Union Check Off | $ 0.46 | $ 0.52 | $ 0.58 |

### Foreman Premium

| | |
|---|---|
| Low Foreman  (5 or fewer Journeymen) | $1.50 |
| High Foreman  (6 or more Journeymen) | $2.25 |
| Designated General Foreman | $2.75 |

### Intermediate Journeyman — April 1, 2012

| | 82% Rate |
|---|---|
| Base Rate of Pay | $ 22.78 |
| Family Health Plan | $ 5.67 |
| National Pension | $ 6.04 |
| SMOHIT | $ 0.02 |
| NEMI | $ 0.03 |
| National Training (ITI) | $ 0.12 |
| Local Training | $ 0.42 |
| Local Industry | $ 0.38 |
| National Industry | $ 0.12 |
| Local 49 DCP (401-K) | $ 0.41 |
| SASMI | $ 1.05 |
| Total Package | $ 37.04 |
| Union Check Off | $ 1.11 |
| Vacation Withholding | $ 2.00 |

1. Successfully completed a sheet metal apprenticeship program registered with the Bureau of Apprenticeship & training or the State Apprenticeship Council but do not have a current New Mexico Certificate of Competence (NMJSM)

2. Have four (4) years and six-thousand (6,000) hours of actual practical working experience for a licensed contractor but do not have a current New Mexico Certificate of Competence (NMJSM).  Organized members may become journeymen by obtaining 500 hours under this agreement and obtaining a current New Mexico Certificate of Competence (NMJSM).

3. Current members of the SMWIA who transfer into the local union from other areas will be elevated to journeymen status once they obtain their New Mexico Certificate of Competence (NMJSM).



STANDARD FORM OF UNION AGREEMENT

Between

The New Mexico Sheet Metal
Contractors Association
2403 San Mateo Blvd NE
Albuquerque, New Mexico 87110
Phone: 505-884-1401 Fax: 505-884-1917

AND

Sheet Metal Workers
LOCAL UNION NO. 49
2300 Buena Vista SE, Suite 310 Albuquerque NM 87106
Phone #: 505-266-5878
Fax #: 505-266-5878

April 1, 2008 to March 31, 2013

## Table Of Contents

PREFACE . . . . . . . . . . . . . . . . . . . . . 1
ARTICLE I JURISDICTION . . . . . . . . . . . . . . . 2
ARTICLE II SUBCONTRACTING . . . . . . . . . . . . . . 3
ARTICLE III EMPLOYMENT / RATIOS . . . . . . . . . . . . 3
ARTICLE IV UNION OBLIGATION TO FURNISH SHEET METAL WORKERS . . . . . . 4
ARTICLE V MEMBERSHIP (UNION) REQUIREMENT / HIRING HALL PROCEDURES . . . . 4
ARTICLE VI WORK DAY — OVERTIME — SHIFT WORK — NOTIFICATION — HOLIDAYS . . . 17
ARTICLE VI National Industry Phonel DISPATCH, ZONES & TRAVEL . . . . . . . 19
ARTICLE VIII WAGES, TRUST FUNDS, RATE ITEMS, NOTICES, PAY DAY . . . . . . . 21
ARTICLE IX TOOLS . . . . . . . . . . . . . . . . . 40
ARTICLE X GRIEVANCE PROCEDURE PROGRAM . . . . . . . . . . 40
ARTICLE XI APPRENTICE PROGRAM . . . . . . . . . . . . 47
ARTICLE XII STEWARDS . . . . . . . . . . . . . . . . 50
ARTICLE XIII FOREMEN . . . . . . . . . . . . . . . . 51
ARTICLE XIV WORKING OWNERS . . . . . . . . . . . . . . 52
ARTICLE XV EMPLOYER'S EQUIPMENT . . . . . . . . . . . . 53
AICLE XVI PASSES . . . . . . . . . . . . . . . . . 53
ARTICLE XVII SAFETY TRAINING/CONTINUING EDUCATION . . . . . . . . . 53
ARTICLE XVIII PICK UP TIME . . . . . . . . . . . . . . 54
ARTICLE XIX CHANGE SHACKS . . . . . . . . . . . . . . 54
ARTICLE XX COMPOSITE CREWS . . . . . . . . . . . . . 55
ARTICLE XXI LABOR COMMITTEE . . . . . . . . . . . . . 55
ARTICLE XXII WORK RULES, OBLIGATIONS AND RESPONSIBILITIES . . . . . . . 55
ARTICLE XXIII REST BREAKS . . . . . . . . . . . . . . 56
ARTICLE XXIV PREDETERMINED WAGE INFORMATION . . . . . . . . . 57
ARTICLE XXV SEPARATE AGREEMENTS AND ADDENDA . . . . . . . . . 57
ARTICLE XXVI REPAIR OF DEFECTIVE AND/OR INFERIOR WORK . . . . . . . . 57
ARTICLE XXVII TARGETED JOBS/MARKET ADVANTAGE . . . . . . . . . 57
ARTICLE XXVIII EFFECTIVE AND EXPIRATION DATES . . . . . . . . . . 58

# STANDARD FORM OF UNION AGREEMENT

Sheet Metal, Roofing, Ventilating, and Air Conditioning
Contracting Divisions of the Construction Industry

## PREFACE

This Agreement entered into this 1st day of April, 2008, by and between NEW MEXICO SHEET METAL CONTRACTORS' ASSOCIATION, INC., (NMSMCA) and Local Union No. 49 of Sheet Metal Workers' International Association, hereinafter referred to as the Union for the entire state of New Mexico, these Counties in Texas: Brewster, Culberson, El Paso, Hudspeth, Jeff Davis, Pecos, Presidio, Reeves, and Terrell.

Note: For the purpose of clarification, the term "Employer" and "Contractor" is synonymous.

(a)  Employers signatory to this Agreement must comply with the following:

(1)  Be licensed as required by state, county and/or municipal ordinance.

(2)  Occupy a permanently established place of business, with an address other than a residence.

(3)  Maintain Workers' Compensation Insurance covering all employees covered by this Agreement.

(b)  The Local Union will refuse to furnish men to other than bona fide Sheet Metal Contractors who are signatory to this Agreement, or are signatory to an Agreement with another local Union which is affiliated with Sheet Metal Workers' International Association, except where special circumstances make necessary the furnishing of men to protect the Union's jurisdiction.

1

## ARTICLE I
## JURISDICTION

Section 1. SCOPE OF WORK

This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in, but not limited to:

(a) the manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or non ferrous metal work, whether architectural, heating, ventilating, air conditioning, and all other materials used in lieu thereof and of all HVAC systems, air veyor systems, exhaust systems and air handling systems, regardless of material used including the setting of all equipment and all reinforcements in connection therewith;

(b) all lagging over insulation and all duct lining;

(c) testing and balancing of all air handling equipment and ductwork;

(d) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches;

(e) metal roofing; and

(f) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

Section 2. WORK PRESERVATION

All Employers bound by this Collective Bargaining Agreement do hereby agree that on all projects the Employer will seek to obtain all work set forth in Section 1. (a) through (f) of this Article. This will include, but not necessarily

**2**

be limited to, all materials, equipment and fabrication customarily furnished by the sheet metal contractor. It is the intention of the parties, by entering into this Agreement, to preserve work customarily performed by members of Sheet Metal Workers' International Association Local 49, AFL-CIO.

## ARTICLE II
## SUBCONTRACTING

Section 1. JOB SITE

The Employer will not subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein, including without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

Section 2. PREFABRICATION

Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for pre-fabrication of materials covered herein, such pre-fabrications will be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

## ARTICLE III

Section 1. EMPLOYMENT

The Employer agrees that none but sheet metal journeymen, intermediate journeymen, registered apprentices, preapprentices, classified workers, and material handlers (including Service & Controls technicians) will be employed on any work described in Article 1 and will be paid as such regardless of the type of work the employee is directed to do. Trust Fund contributions,

**3**

deductions and conditions will be applicable to all hours for which the employee is paid, except travel time which occurs after the employee has accumulated eight (8) hours of work/travel in a day. Further, for the purpose of proving jurisdiction, the Employer agrees to provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMWIA, will be provided to the Employer.

Section 2. RATIOS

Employers may employ apprentices, preapprentices and classified workers under the general direction of a qualified journeyman sheet metal worker in accordance with governing laws.

### ARTICLE IV
### UNION OBLIGATION
### TO FURNISH SHEET METAL WORKERS

Section 1. OBLIGATION

The Union agrees to furnish, upon request by the Employer, duly qualified sheet metal journeymen, intermediate journeymen, registered apprentices, preapprentices, classified workers and material handlers (including Service & Controls technicians) in sufficient numbers as may be necessary to properly execute work contracted by the Employer in the manner and under the conditions specified in this Agreement. When the Union is unable to furnish sheet metal workers within two working days (Monday through Friday), the Employer may secure sheet metal workers from any source available.

### ARTICLE V
### MEMBERSHIP (UNION) REQUIREMENT / HIRING
### HALL PROCEDURES

**4**

Section 1. CONDITIONS
(a)  The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article 1 of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the latter, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members.

(b)  If during the term of this Agreement, the Labor-Management Relations Act of 1947 is amended by Congress in such manner as to reduce the time within which an employee may be required to acquire Union membership, such reduced time limit will become immediately effective instead of and without regard to the time limit specified in Section 1(a) of this Article.

(c)  The provisions of this Article will be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article will be deemed to take effect as to involved employees immediately upon compliance with such conditions.

Section 2. HIRING PROCEDURE
The following provides for a system of recruiting applicants for employment on a nondiscriminatory basis.

(a)  Qualified Craftsman
For the purposes of these hiring procedures, the term "journeyman" will include sheet metal workers, Service & Controls technicians and test & balance technicians.
Employers will employ only:
*   Journeymen who are qualified as set forth in the following paragraph.
*   Intermediate journeymen
*   Registered apprentices

**5**

- Preapprentices
- Classified Workers
- Material Handlers

## Journeymen will be qualified for employment who have:

1. Successfully completed a sheet metal apprenticeship program registered with the Bureau of Apprenticeship and Training or the State Apprenticeship Council and have a current New Mexico Certificate of Competence (NMJSM). Travelers (sheet metal journeyman from other local unions) are exempt.

2. Have 4 years and six-thousand (6,000) hours actual practical working experience for a licensed contractor and have a current New Mexico Certificate of Competence (NMJSM).

## Intermediate journeymen will be qualified for employment who have:

1. Successfully completed a sheet metal apprenticeship program registered with the Bureau of Apprenticeship and Training or the State Apprenticeship Council but do not have a current New Mexico Certificate of Competence (NMJSM).

2. Have 4 years and six-thousand (6,000) hours actual practical working experience for a licensed contractor but do not have a current New Mexico Certificate of Competence (NMJSM). Intermediate journeymen (organized) may become journeymen by obtaining 500 hours under this agreement and obtaining a current New Mexico Certificate of Competence (NMJSM).

- Current members of the SMWIA who transfer into this local union from other areas. Once they obtain their New Mexico Certificate of Competence they will be elevated to journeyman status.
- Training will be provided periodically to assist Intermediate journeyman in achieving the requirements of this agreement to become journeymen.
- Intermediate journeymen will receive the wage rate and benefit package

**6**

as per the wage schedule set forth by this agreement.

(b) Hiring

(1) The Employer recognizes Local 49 as a source for obtaining employees who perform any of the duties described in Article 1 of this Agreement and in return the Union agrees to provide the Employer a pool of registrants to be considered by the Employer in filing such positions. The Employer agrees to hire exclusively from the pool of registrants provided by the Union, without regard to the place of the individual registrants within the pool, provided qualified registrants as defined above are available.

(2) Hiring Procedure: Employers
Employers requesting registrants from the Union will specify on the manpower request form. All requests for referral will be in writing or electronic file.

- Number of workmen required to man the job.
- Location of project.
- Nature and type of construction involved.
- Work to be performed.
- Whether a Journeyman's License is required by the Employer
- Any other specific requirements associated with the work

(3) Hiring Procedure: Journeyman. Intermediate Journeyman, Classified Worker

(a) Will be contacted by dispatcher of union as per employment opportunities.

(b) Upon notification by dispatcher union member will be required to contact local union for work referral and information on employment pertaining to drug testing, company orientation, and or any special requirements of employment.

**7**

(c)   Members are responsible for registering on the out of work pool when unemployed.  They must contact local union by telephone or in person to register. No registration will be accepted from a person currently employed in the sheet metal trade.

(4)  Hiring Procedure: First and Second Year Apprentices and Preapprentices

(a)   Must complete out of work registration form in person and have current termination slip to be placed on the out of work list.

(b)   Apprentices are placed on the out of work list in the order they register.

(c)   First and Second Year apprentices and preapprentices are on a closed hiring system, meaning first in, first out.

(d)   Employers may not specifically request a first or second year apprentice regardless of placement on the list.

(e)   Employers may deny a current apprentice or preapprentices for just cause only if he/she has been employed with the employer previously. Employers may hire the next available apprentice.

(f)   Apprentices willing to accept a short call (fourteen calendar days or less) may remain on the out of work list and not lose their placement.

(g)   If an apprentice refuses a call their name will be placed at the bottom of the list and the situation reviewed by the Joint Apprenticeship and Training Committee.

(5)  Hiring Procedure: Apprentices Third and Fourth Year only.

(a)   Must complete out of work registration form in person and have current termination slip to be placed on the out of work list.

(b)   Apprentices are placed on the out of work list in the order that they register.

(c)   Third and fourth year apprentices can terminate their own employment and seek their own career path in the sheet metal industry.

(d)   Employers may request a specific third or fourth year apprentice regardless of placement on the list due to experience or specialized skill level.

(e)   Employers may deny a current apprentice for just cause only if he/she has been employed with the employer previously. Employers may hire the next available apprentice.

(f)   Apprentices willing to accept a short call (fourteen calendar days or less) may remain on the out of work list and not lose their placement.

(6) Service Fee Provision:

All registration pool applicants must pay a monthly registration fee of not less than three times the Journeyman total hourly package rate for Zone 1. Service fees are due and payable before the first day of each month. Registrants who fail to pay their fees by the first day of the month will have their name removed from the registration pool.  Members in good standing are excluded from the provisions of this paragraph.

(c)   Registration Facilities

Registration Facilities will be available at the local union office at 2300 Buena Vista SE Suite #110, during normal business hours, Monday-Friday excluding holidays.

8                                              9

(d)  Discharge

Employers agree to provide a written notice of termination to every employee discharged. Termination slips of the form furnished by NMSMCA to the Employer will be used and executed by an authorized Employer Representative and a copy will be provided to the Employee and the Local Union. No other form will be substituted. Employers agree to discharge employees for just cause.

The Union and the Employer will post in places where notices to all employees and applicants for employment are customarily posted, all provisions relating to the functioning of the hiring provision of this Agreement.

(e)  Joint Hiring Committee

The Local Joint Adjustment Board, as provided for under Article X of this Agreement, will serve as the Joint Hiring Committee and actions taken or deadlocked questions will have the same recourse as provided for in the grievance procedures. The Joint Hiring Committee is empowered:

(1)  To establish any and all rules and regulations from time to time that it deems advisable for the operation of the registration system.

(2)  Properly post the rules and regulations at the Union office or job site.

(3)  Establish an examination designed to evaluate the skills and training of a sheet metal worker, Service & Controls technician or Test & Balance technician and certify examined registrants as qualified.

(4)  To hear and determine any and all disputes or grievances arising out of the registration system including, but not limited to, grievances arising from out-of- work registration and the preparation of the registration pool.

**10**

Any applicant or registrant will have the right to appeal any dispute or grievance arising out of and relating to the operation and functioning of the registration system to the Joint Hiring Committee. When any job applicant is aggrieved for any reason related to the operation of the registration system, the aggrieved may, within ten (10) days following the occurrence of the event constituting the basis for the grievance, file a written and specific statement of the grievance with (a) the Union representative in charge of the registration system against which the aggrieved is complaining, and (b) any Employer signatory to this Agreement or the NMSMCA. Grievances will thereafter proceed in accordance with Article X of this Agreement.

(5)  Determinations of the Joint Hiring Committee will be made without regard to an applicant's membership or non-membership in the Union.

(f)  Apprentices and Preapprentices

Employment of apprentices and preapprentices will be governed by the provisions of the Joint Apprenticeship and Training Committee as provided for in other provisions of this Agreement.

(g)  Record Information

(1)  In addition to the application forms and registration pool provided for herein, the Union will maintain an employment record showing, for each applicant registered hereunder, for each of the employments during the year immediately prior to the first registration and for each of the subsequent employments, whether or not they be employed with a Employer signatory to this Agreement, the following data:

a.  Date and Places of employment
b.  Reasons for termination of employment
c.  Record of LU No. 49 journeymen training courses successfully completed
d.  Right-to-Know Certification

**11**

(1)    The Employer will submit information on status changes, if any, to the registration system on any termination and the reasons therefore.

(h)    Right to Inspection

The Joint Hiring Committee will have the right at any time to inspect the records pertaining to the operation of the registration system and make any investigation necessary to satisfy the committee that the terms of this Article are being fully complied with. Any information contained in these records that is on file in the Union Hall will be made available, in writing, to any signatory Employer upon request.

Section 3. MATERIAL HANDLERS
(a)    Provisional Member

Notwithstanding other provisions of this Agreement to the contrary, material handlers will be allowed and must, within eight (8) days of employment, become provisional members of the Union to perform certain limited functions under this Agreement.

(b)    Work Jurisdiction

Material handlers who become provisional members of the Union will be allowed to load, deliver, unload, string out ductwork and move finished products and materials specified in Article I of this Agreement.

(c)    Rate of Pay, Overtime, Work Day

(1)    The rates of pay for material handlers will be as described in the Wage Schedule. Overtime will be paid at the rate of one and one half (1 1/2) times the regular rate of pay for all hours in excess of ten (10) hours per day or forty (40) hours per week.

12

(2)    The regular workday will consist of up to ten (10) consecutive hours of labor between the hours of 5:00 a.m. and 7:00 p.m. The regular workweek will consist of five (5) consecutive days, beginning with Monday and ending with Friday of each week.

(d)    Contributions

The Employer shall contribute to each fringe benefit fund as specified in the appropriate "Material Handler" wage schedule.
The Employer shall deduct the Union Check Off as specified in the appropriate "Material Handler" wage schedule.

Note: As specified in the "Material Handler" wage schedule, Employers are required to contribute to the SMWIA Local 49 Family Health Plan for all hours worked after the first 1000 hours of employment.

(e)    Recruitment

Future material handlers can be recruited by any source available. Material handlers can pursue entry into the apprentice program by completing the requirements set forth by the Joint Apprenticeship and Training Committee.

Section 4. SUBSTANCE ABUSE / DRUG TESTING
(a)    DRUG AND ALCOHOL TESTING An Employer may require drug and alcohol testing for purposes of pre-hire screening and occurring post accident. Such testing, if required by the Employer, will be done consistently and not on a random basis. If for any reason a test is considered positive the Employer/Member shall have the sample reviewed by a Medical Review Officer (MRO). The Employee has the option to submit a portion of the same sample to a third party laboratory, as explained in paragraph (c) 3.

For contractors who don't require drug and alcohol testing for purposes of pre-hire screening, the Union will send the member to a testing laboratory

13

prior to being dispatched and invoice the requesting Contractor the cost of testing times two for members hired. Invoices must be paid within (10) ten days or the union will refuse to dispatch additional members to that contractor.

(b) REASONABLE CAUSE TESTING An employee may be required to submit to a chemical test, which demonstrates on-the-job impairment, if there is a reasonable, objective basis to believe the employee is impaired. A reasonable, objective basis will exist under the following circumstances:

(1) If two individuals observe and document their observations of the impairment in writing;

(2) The employee is involved in an accident causing damage to company or personal property, or third party property

(3) The employee is involved in an accident causing personal injury to himself or others requiring medical attention;

NOTE: If an owner, general contractor, customer or MCA of NM Worker's Compensation Group Fund requires a method of Substance Abuse Testing that is different from the methods outlined in this Section as a condition of participation in their project, their criteria and method(s) shall supersede this Agreement.

Any individual who experiences or is deemed to have caused a personal injury on the job which requires medical care by a licensed physician will undergo a test for substance abuse within two hours of the time of the accident. Any person involved in an accident, which involves damage to company, or private property will undergo said substance abuse screening within two hours of the time of the accident. Refusal to submit to this will be grounds for immediate termination.

(c) TESTING EXPENSE - PROCEDURE Testing will be done at the Employer's

**14**

expense and will be conducted under the supervision of a qualified medical professional. The test will be done at a testing laboratory in accordance with NIDA/ SAMHSA certified standards. A 5+ Alcohol, forensic, urine test (testing for five drugs and alcohol) will be utilized for pre-employment testing. A 10+ Alcohol, forensic, urine test (testing for ten drugs and alcohol) will be utilized for post accident, post injury or reasonable cause testing.

(3) Employee/ Member being tested must indicate to the Testing laboratory any medication or legal substance being taken which could influence the outcome of the test.

(4) Only designated individuals with each Employer and only designated individuals with the Union will be authorized to receive reports of tests from the laboratory. Designated individuals will be required to sign a confidentiality statement acknowledging the sensitive nature of the information they will be receiving and instructing them that this information can only be discussed with the designated individuals with employer and or union. The affected individual and the EAP. This statement should further state that these designated individuals will be held personally liable should any of the information be divulged to any other persons. A copy of this acknowledgement will be sent to the Employer, Local Union and the EAP. In addition, all employees/ members being tested will receive a copy of the test results.

(5) Any employee testing positive or invalid may request a urine sample through the testing laboratory for the purpose of having a separate test made by an independent lab qualified to make such tests. In the event that a positive test is determined to be negative through the independent testing laboratory, the Employer will reimburse the employee for the test run by the independent testing lab.

(6) Employee will be paid for time used for submitting to the original test as directed by the Employer; the employee will not be paid for time used for additional tests initiated by other than the Employer. Employers will not be

**15**

required to pay for time used to submit for the original test if the employee fails to report for employment after taking the test.

(d) REFERRAL TO EMPLOYEE ASSISTANCE PROGRAM An employee testing positive will be directed to the EAP by the Employer. Members dispatched but not hired by the Employer testing positive will be directed to the EAP by the Union.

(1) An employee refusing to submit to a test under the above conditions or refusing to cooperate with the EAP program will be subject to termination.

(2) An employee who cooperates fully with the EAP program will be allowed to return to work, providing work is available. A member who cooperates fully with the EAP program will be allowed to return to the Out-of-Work List.

(3) An employee testing positive a second time after a confirmed first positive will be subject to immediate termination. The Employer agrees to administer this provision uniformly among all employees, members, and management.

(e) POLICY REVIEW PANEL A review board to be known as the Policy Review Panel composed of one neutral management person, one neutral labor person, and one representative from the EAP will be formed and maintained for the purpose of resolving disputed claims pertaining to testing, between an employee and the Employer. All disputes resulting from the application of this policy will be referred to this Policy Review Panel for consideration. Should this Panel fail to reach a suitable resolution to a complaint; the complaining party can utilize the grievance procedure contained in Article X of this Agreement.

Section 5. PRE-EMPLOYMENT PHYSICAL
An Employer may, subsequent to making an offer of employment, require all prospective employees to submit to a pre-employment physical medical examination for the purpose of determining whether the applicant is capable

16

of the essential job functions required to perform the job.

Employers that implement a pre-employment physical agree that a pre-employment medical examination will be conducted in accordance with provisions contained in the "Americans with Disabilities Act" (Title 42, USCA, Section 12112).

## ARTICLE VI
## WORK DAY – OVERTIME – SHIFT WORK – NOTIFICATION - HOLIDAYS

Section 1. WORK DAY
(a) The regular work day will consist of eight (8) to ten (10) consecutive hours labor in the shop or on the job between six (6) a.m. and six (6) p.m. The regular workweek will consist of consecutive workdays totaling forty (40) hours labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours will be recognized as regular working hours and be paid for at the regular rate of pay. Except as otherwise provided pursuant to Subsection (a) and Sections 2 and 3 of this Article, all work performed outside of regular working hours and performed during the regular work week will be at one and one/half (1 1/2) times the regular rate of pay.

(b) Up to ten (10) consecutive hours work (excluding lunch) may be performed at the straight time rate of pay on existing, occupied buildings during any twenty four (24) hour period; work beyond ten (10) hours per day or over forty (40) hours per week will be subject to overtime as stated in Section 2 of this Article. Employees must have a twelve (12) hour rest period between quitting and starting times.

(c) Employees will be at the shop or project site at their work location at the scheduled starting time each day and will remain at their work location until quitting time.

17

## Section 2. OVERTIME

Overtime will be paid after ten (10) hours per day or forty (40) hours per pay period, and for any time worked on Saturday or Sunday, at the rate of one and one half (1 1/2) times the regular rate of pay, with the exception of the nine named holidays listed in Section 5 of this Article, which will be paid at the rate of two (2) times the regular rate of pay. Worker cannot be penalized for not working Sundays and Holidays.

## Section 3. SHIFT WORK

(a)  Shift work will be allowed on all construction work.  Not less than five (5) full consecutive days will justify shift work.  Shift work may end on a day other than Friday on a job by job basis as mutually agreed upon between the Employer and the Local Union.  Otherwise, shift work will end on Friday.

(b)  Employee shall receive their regular daytime rate of pay between the hours of 6:00am and 6:00pm.  They shall receive five percent (5%) shift premium pay for all hours worked between 6:00pm and 1:00am.  They shall receive ten percent (10%) premium pay for all hours worked between 1:00am and 6:00am.

(c)  Employees must have a twelve (12) hour rest period when changing shifts.

(d)  The Local Union office and the shop or job steward must be notified when shift work is to be practiced.

(e)  All shift work over the regular shift hours will be paid at the overtime rate of pay as provided in Section 2 of this Article.

## Section 4. NOTIFICATION BY EMPLOYER

It is agreed that all work performed outside the regular working hours during the regular work week and on holidays will be performed only upon notification by the Employer to the Local Union in advance of scheduling such work.  Preference for overtime and holiday work will be given to men

on the job on a rotation basis so as to equalize such work as nearly as possible.

## Section 5. HOLIDAYS

(a)  New Year's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, Christmas Eve Day and Christmas Day will be the observed holidays. All work performed on holidays will be paid at two (2) times the regular rate of pay.

(b)  Only the nine (9) named holidays above will be observed, and if any of the holidays fall on a Saturday, the preceding Friday will be observed; if any of the holidays fall on Sunday, the following Monday will be observed.

## ARTICLE VII
## DISPATCH, ZONES & TRAVEL

### Section 1. DISPATCH

The jurisdiction of the Union will consist of the following zones:  Zone 1; Zone 2; and Zone 3.  Employees may be dispatched to a job in any zone by the Union or by the Employer.  Apprentices, preapprentices, classified workers and material handlers will receive 100% of the subsistence and Zone premiums.

### Section 2.  SUBSISTENCE (Effective October 1, 2008)

The parties intend travel pay to fairly compensate employees for travel, not to place contractors at a competitive disadvantage due to geographic location or to create artificial barriers against out-of-area contractors.

(a)  Subsistence will be paid in any area outside the Employer's home zone, as described in Section 3(a) of this Article, unless the jobsite is within ninety (90) miles of an employee's principle place of residence in which case the Employer will not be required to pay subsistence to that employee while working on that jobsite.

(a)  If an over night stay is required, $50.00 subsistence will be paid for

18                                    19

each day worked outside of the Employer's home zone as described in Section 3 (a) and 2 (a) of this Article.

EXCEPTION: No subsistence is required should employer decide to cover room cost

### Section 3. ZONE 1

Zone 1 will be described as:

(a) Any area within an Employer's home zone. An Employer's home zone will consist of a 90 mile radius from the main post office in the municipality of the Employer's primary place of business.

### Section 4. ZONE 2 (INDUSTRIAL)

(a) Industrial work will be defined as all new construction work performed on the following types of facilities; Electrical generation plants, Co-generation plants fifty (50) megawatts and over, Refineries, Natural and LP Gas plants, Mills, Mines, and Concentrators. Maintenance and retrofit work are excluded from this section.

(b) The minimum rate of pay for all work described in (a) above will be as indicated under Zone 2 in the Wage Schedule of this Agreement. ($1.00/hr. premium)

### Section 5. ZONE 3 (LOS ALAMOS)

(a) Zone 3 will be described as an area within Los Alamos County.

(b) The minimum rate of pay for all work described in (a) above will be as indicated under Zone 3 in the Wage Schedule of this Agreement. ($2.00/hr. premium)

### Section 6. TRAVEL

(a) All time spent traveling during the regular work day, as described in Article VI, Section 1 of this Agreement, will be considered time worked and

**20**

will be paid at the Zone 1 rate of pay, provided such travel is directed by the Employer. Travel before or after the regular workday will not be considered time worked and will not be paid unless required by Federal or State Law. If required by law, all time spent traveling outside of the regular work day will be paid at the overtime rate of one and one half (1½) times two thirds (2/3) the regular Zone 1 rate of pay.

(b) Sheet metal journeymen, intermediate journeymen, apprentices, preapprentices, classified workers and material handlers covered by this Agreement will not be required, as a condition of employment, to furnish the use of an automobile or other conveyance to transport the Employer's personnel, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation will be provided by the Employer. This provision will not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time, or once from job to job during the day, or from shop or job to home at quitting time. An employee may drive or ride in a company vehicle to and from the work site or furnish their own transportation. In either event, the employee will be at the work site at starting time and remain until quitting time, performing a full day's work for a full day's pay.

(c) If an Employer sends an employee to perform work outside of the territorial jurisdiction of the United States of America or Canada, travel pay and/or subsistence arrangements shall be negotiated locally.

### ARTICLE VIII
### WAGES, TRUST FUNDS, RATE ITEMS, NOTICES, PAY DAY

Section 1. WAGES
The minimum rate of wages for sheet metal workers covered by this Agreement, when employed in a shop or on a job within the jurisdiction

**21**

of the Union to perform any work specified in Article I of this Agreement, will be set forth in the Wage Schedules included in this Agreement, unless otherwise stated within this Agreement and except as hereinafter specified in Section 2.

## Section 2. HIGHER WAGE SCALE

On all work specified in Article I of this Agreement, fabricated and/or assembled by sheet metal journeymen, apprentices, preapprentices and classified workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other Local Union affiliated with Sheet Metal Workers' International Association whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the job site will be paid to the employee performing such work in the home shop or sent to the job site. Besides wage equalization between Local Unions, wage equalization will be required between "collective bargaining areas".

## Section 3. MANUFACTURED ITEMS

The provisions of Section 2 of this Article, Section 2 of Article II and Section I of Article III will not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality.
6. Mixing (attenuation) boxes
7. Plastic skylights
8. Air diffusers, grilles, registers
9. Sound attenuators
10. Chutes
11. Double wall panel plenums

**22**

12. Angle rings

## Section 4. AIR POLLUTION CONTROL SYSTEMS

The provisions of Section 2 of this Article will not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings, except when such a provision is contained in the Local Union agreement or addendum to the SFUA.

## Section 5. TERRITORIAL JURISDICTION

Except as provided in Sections 2 and 6 of this Article, the Employer agrees that sheet metal journeymen, apprentices, preapprentices and classified workers hired outside of the territorial jurisdiction of this Agreement will receive the wage scale and working conditions of the local Agreement covering the territory where such work is performed or supervised.

## Section 6. WORK OUTSIDE THIS JURISDICTION

When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, the Employer may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom will be from the Employer's home jurisdiction. All additional sheet metal workers will come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement will be paid at least the established minimum wage scale specified in Section I of this Article, but in no case less than the established wage scale of the local Agreement covering the territory where such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer will be otherwise governed by the established working conditions of that

**23**

Local Agreement. If employees are sent into an area where there is no Local Agreement of the Sheet Metal Workers' International Association covering the area, then the minimum conditions of the home Local Union will apply.

### Section 7.  CONTRACTUAL BENEFITS

In applying the provisions of Sections 2, 5 and 6 of this Article, the term "wage scale" will include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said sections.

### Section 8.  WELFARE BENEFITS

Welfare benefit contributions will not be duplicated. When sheet metal workers are employed temporarily outside the jurisdiction of their home Local Union, the parties signatory to this Agreement agree to arrange through the SMWIA Local 49 Family Health Plan to transmit health and welfare, 401(k) contributions made on behalf of the employee's home Local Union. The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the Local Collective Bargaining Agreement when health and welfare contributions are transmitted on their behalf by trust funds by other areas.

When sheet metal workers are temporarily employed outside the jurisdiction of their home local union, the parties signatory to this agreement shall arrange to transmit any 401(k) contributions required to be made to a 401(k) plan where the work is performed to a 401(k) plan established for the employee's home local union, and/or to the National Supplemental Savings Fund.

This obligation is conditioned upon a suitable reciprocity arrangement being agreed to by the trustees of such plans.

### Section 9.  PAYMENT OF WAGES/ELECTRONIC TRANSFER

(a)  Wages at the established rates specified herein will be paid weekly in the shop or on the job at or before quitting time on the specified payday,

**24**

except in the event the specified payday is a holiday, in which case on the day preceding the holiday at or before quitting time. Time may be estimated to allow for payday preceding a holiday.  If adjustments are necessary they may be made the following week without the Employer accruing any penalties.  No more than three (3) working days pay will be withheld; however, employees when discharged will be paid in full.

Electronic transfer of funds or automatic deposit may be allowed at the discretion of the employee, provided however, that if an employee is discharged he will be paid in full at the time of discharge.

If payment is made via electronic transfer or automatic deposit then the pay voucher shall be received at the employee's last known mailing address no later than the end of the next pay period.

(b)  If an employee is not paid by, electronic transfer or check by quitting time on the specified pay day, the employee will continue working until such time as paid, up to one and one half (1 1/2) hours beyond the regular quitting time, and will be paid at the overtime rate of pay for such work.

(c)  In the event an employee, in a situation as described in Paragraph (a) above, has not been paid by 8:00 a.m. the following day, the employee will receive the regular rate of pay until such time as the employee is paid, for up to four (4) hours, such time period ending at 12:00 noon that day. The employee's presence at a job site or shop will not be a requirement of this provision.

(d)  In the event an employee is paid by a nonnegotiable check, the employee will be entitled to the compensation as provided for in Paragraphs (b) and (c) of this section; however, the requirement that the employee work during the one and one half (1 1/2) hours overtime period is not applicable to this Paragraph.

(e)  In the event of underpayment or overpayment of wages or other

**25**

compensation provided for in the Agreement, and payment or recovery has not been made, either party will have available to them the remedies provided for under Article X; however, all claims will be made in writing to the party alleged to be in violation within thirty (30) days from the time of the alleged violation.

(f) Employers will use and retain a system of time cards and definitive voucher copies which lends itself to an easy cross reference with the books of record, government payroll reporting, trust fund contributions, withholding and/or other deductions.

## Section 10. SHOW UP TIME

Sheet metal journeymen, intermediate journeymen, apprentices, preapprentices, classified workers and material handlers who report to work by direction of the Employer and are not placed at work will be entitled to two (2) hours pay at the established rate. This provision, however, will not apply under conditions over which the Employer has no control. Employees who arrive physically unable to work, without proper tools or credentials, or who are not specifically qualified as requested will not be paid show up time.

## Section 11. TERMINATION OR DISCHARGE

In the event of the termination or discharge of any employee, the Employer will give to the employee either one (1) hour notice of such termination or discharge, or one (1) hour pay in lieu thereof. Payment is to be made to the employee at the designated job site.

## Section 12. NATIONAL INDUSTRY FUND

(a) Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of Collective Bargaining Agreements, research and promotion, such programs serving to expand the market for the services of the sheet metal industry, improve the technical and business skills of Employers, stabilize and improve Employer Union relations, and promote, support and improve the employment opportunities for employees. No part of any such

payments, however, will be used for any other purpose except as expressly specified above.

(b) The Employer will pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) the contribution rate per hour for each hour worked on or after the effective date of this agreement as shown in the Wage Schedules. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(c) The IFUS will submit to the Sheet Metal Workers' International Association not less often than semiannually written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS will include in such written report a financial statement attested to by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures will be furnished to the Sheet Metal Workers' International Association upon written request.

(d) Grievances concerning use of IFUS funds for purposes prohibited under Section 12(a) or for violations of other subsections of this section may be processed by the Sheet Metal Workers' International Association directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator will be selected by the Co Chairmen of the National Joint Adjustment Board. The Arbitrator will be authorized to impose any remedial order deemed appropriate for violation of this Section, including termination of the Employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section, (Section 12, Article VIII) and no other.

Section 13.  LOCAL (NMSCA) INDUSTRY FUND

(a)  Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of Collective Bargaining Agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payment, however, will be used for any other purpose except as expressly specified above.

(b)  The Employer will pay to the NMSMCA, (hereinafter referred to as Local Industry Fund) the contribution rate per hour for each hour worked on or after the effective date of this agreement as shown in the Wage Schedules. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement. Should any Employer, signatory to this Agreement, refuse to pay towards the Local Industry Fund, said Employer will be required to pay specified amounts into the Local Training Fund in addition to the amount required by this Agreement for the Local Training Fund.

(c)  The Fund will furnish to the Business Manager of the Union, not less often than semiannually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the Fund will include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and statement of receipts and disbursements. Further specific detailed information in regard to Fund activities or its receipts and/or disbursements will be furnished to the Business Manager of the Union upon the written request.

(d)  Grievances concerning use of local industry fund monies to which an Employer will contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section will be handled under the provision of Article X of this Agreement. The National Joint Adjustment Board will be authorized to impose any remedial order for violation of this Section.

Section 14.    CONTRIBUTIONS — PROJECT AGREEMENTS/MAINTENANCE AGREEMENTS

The Union and the Employer recognize that the contributions provided in Sections 12 and 13 of this Article support activities that benefit the entire sheet metal industry. It is essential that Employers support these activities, even though the Employer may be performing sheet metal work under the provisions of a separate project agreement or maintenance agreement. Therefore, hours worked for purposes of determining the contributions required under Sections 12 and 13 of this Article shall include all hours worked by each employee of the Employer under any project agreement or maintenance agreement unless specifically excluded by the terms of a written addendum that is negotiated by the NMSMCA and the Local Union that are parties to this agreement.

Section 15.  INTERNATIONAL TRAINING INSTITUTE, NEMI, SMOHIT

(a)  Effective as of the date of this Agreement the Employers will contribute to the International Training Institute (ITI) the contribution rate per hour for each hour worked on or after the effective date of this agreement as shown in the Wage Schedules. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(b)  Effective as of the date of this Agreement the Employers will contribute to the National Energy Management Institute Committee, a jointly administered trust fund, the contribution rate per hour for each hour worked on or after the effective date of this agreement as shown in the Wage Schedules. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

28

29

(c) Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupational Health Institute Trust the contribution rate per hour for each hour worked on or after the effective date of this agreement as shown in the Wage Schedules. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(d) The parties agree to be bound by the separate Agreements and Declarations of Trust establishing the International Training Institute, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements.

(e) The parties authorize the Trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

Section 16. TRUST FUNDS
(a) The Employer will contribute to the Sheet Metal Workers' Health and Welfare Family Health Plan, Local and National Industry Funds, Local Training Fund, International Training Institute, SMOHIT, NEMIC, National Pension Fund, SASMI, Sheet Metal Workers Local 49 Defined Contribution Pension Plan (401-K) and any other parties or Funds in accordance with the Agreement.

(b) The Employer will deduct from the net pay of each employee amounts as specified in Article VIII, Sections 23, 24 and 26.

(c) The Employer will make fringe benefit contributions for each hour worked by employees covered by this Agreement as per the Wage Schedules of this Agreement.

Section 17. PAYMENT OF TRUST FUNDS
Contributions and deductions will be paid monthly through the respective Trust Fund(s) Office(s). The Board of Trustees of the various funds will provide the Employer with the necessary forms for the transmittal of the monies. Information will be readily corroborative with the books of record.

Section 18. MONTHLY REPORTS
Monthly reports will be mailed to the respective Trust Fund(s) Office(s), with a copy to the NMSMCA office and Local Union No. 49 office, and applicable remittance will cover through the last day of the regular pay week period occurring during the reportable month. The subsequent monthly report will commence with the day following the last previous day reported.

Section 19. REPORT DUE DATES AND PENALTIES
(a) Monthly reports and remittances will be due in the Trust Fund Office on the 10th day of the month following the end of the reportable month.

(b) Monthly reports and remittances not received by the 14th day of the month following the end of the reportable month will be delinquent.

(c) All delinquent reports and remittances will incur fifteen percent (15%) per annum liquidated damages.

(d) All delinquent reports and remittances not submitted by the last day of the month in which they are due will be assessed interest at a rate to be set from time to time by the Board of Trustees from the fourteenth day of that month.

(e) Any Employer who fails to submit a monthly report by the fourteenth day of the month will be assessed a $10.00 per month late fee.

30

31

(f) Any Employer that is delinquent in it's submission of contributions and/or its monthly report will be assessed the cost of any audit that the Board of Trustees subsequently orders.

(g) Any Employer that is delinquent in it's submission of contributions and/or its monthly report will be assessed all attorney's fees incurred by the Board of Trustees, including the cost of pre-litigation legal fees and expenses.

(h) The Board of Trustees has full authority to implement such collections and procedures it deems appropriate to enable it to meet its fiduciary obligations to collect delinquent contributions.

(i) If reports and remittances, including applicable penalties, have not been brought to a current condition by the 15th day of the month, the Trustees of each respective Fund may pursue all remedies available, including litigation and/or instructions to the Local Union to withdraw all bargaining unit employees.

(j) The Union will refer employees back to the Employer who is delinquent when delinquent reports and all assessments are received in the Trust Fund office.

Section 20. SECURITY REQUIREMENTS
(a) Each Employer hiring employees covered under Article I of this Agreement will furnish a security for the payment for fringe benefit contributions in the minimum amount of ten- thousand dollars ($10,000) Security may take the form of a bond, cash collateral, or other form of security acceptable to the Board of Trustees. The amount of the security will be based on the estimated amount of an Employer's fringe benefit obligation projection per month, equated to six (6) weeks. If an Employer's amounts on reports exceed its security for three (3) consecutive months, or by joint demand of the Board of Trustees of the various funds, it will increase it's security to

32

the next applicable five thousand dollar ($5,000.00) increment. If a surety bond is furnished, such bond will be secured with a company and in such form as is satisfactory and payable to the Board of Trustees of the various funds under this Agreement.

(b) This security is for the use and the benefit of the funds, guaranteeing and assuring payment of such moneys due in accordance with this Agreement and together with reasonable expenses incurred in the collection thereof.

(c) Security documents will be placed in the Trust Fund Office prior to the referral of any employees by the Union to Employers. It will be the obligation and the duty of the officials of the Union to confirm the existence of effective security at the Trust Fund Office.

(d) When an Employer terminates the last employee on whom benefits are being accrued and funds being remitted to the Trust Fund Office, Employer will indicate on the final report form that such is the case. When the information is received by the Trust Fund Office, this information is to be immediately relayed to the office of the Union, followed by a confirmation (in writing) of such information.

(e) Failure to furnish and maintain security in accordance with the requirements in the Agreement will constitute delinquency, and will be subject to the conditions and penalties as set forth in Section 18 of this Article.

Section 21. SMWIA LOCAL 49 FAMILY HEALTH PLAN
The SMWIA Local 49 Family Health Plan and Declaration of Trust, established January 26, 1953, is hereby renewed without interruption and will be administered by a Joint Board of six (6) Trustees, composed of three (3) Trustees designated by the NMSMCA and three (3) Trustees designated by the Union. The Joint Board of Trustees will have full authority and power to administer the plan, decide upon its benefits and rule with respect to all technical questions, which arise.

33

(a) The Employer will contribute the amount specified in the Wage Schedule for each hour worked by each employee covered by this Agreement to the SMWIA Local 49 Family Health Plan. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(b) The parties to this Agreement will have the right, upon recommendation of the Joint Board of Trustees of the SMWIA Local 49 Family Health Plan, to cancel the Agreement of any Employer found in violation of any provision of this Section and to take any other action it deems necessary, notwithstanding any other provision or section to this Agreement to the contrary.

### Section 22. NATIONAL PENSION FUND

(a) The Employer agrees to adopt the National Pension Fund Plan "A" as presently constituted and as the same may be amended from time to time, to be bound by all rules and regulations of the plan as adopted by the trustees, as presently existing and as the same may be amended from time to time.

(b) Each Employer will contribute amounts per hour as set forth in the Wage Schedules attached to this Agreement. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(c) The parties to this Agreement will have the right, upon recommendation of the Joint Board of Trustees of the Sheet Metal Workers National Pension Fund, to cancel the Agreement of any Employer found in violation of any provision to this Article and to take any other action it deems necessary notwithstanding any provision or section of this Agreement to the contrary.

(d) The Employer and the Union recognize that, during the term of this Agreement, the Sheet Metal Workers' National Pension Fund (NPF) will notify the parties of the Fund's status under the Pension Protection Act of 2006.

**34**

It is anticipated that the Fund will be in critical status. Consequently, the Employer and the Union further recognize that a surcharge may be imposed upon contributions to the Fund, and that the Fund may adopt a rehabilitation plan, incorporating alternative schedules of benefits and contributions, during the term of this Agreement.

(e) The parties agree that the 2008 Alternative Schedule is adopted and that the Union will allocate a portion of the wage and fringe-benefit package to the schedule described above and be deemed to be adopted or where the agreement provides for an automatic allocation or reallocation of the wage and fringe-benefit package, that is sufficient to cover fully any increases in contribution rates to the NPF under that schedule

(f) It is undesirable to pay a surcharge upon pension contributions, with no resulting improvement in pension benefits. Accordingly, in the absence of a reallocation as provided above, at such time as the Trustees of the Fund furnish the Employer and the Union with alternative schedules as provided above, either party may re-open this Agreement upon thirty days written notice to the other, for the purpose of reaching agreement upon the adoption of one of those schedules. During the negotiations, the parties shall give due recognition to the desirability of maintaining pension benefits in light of economic conditions in the local area.

(g) The parties agree further that the schedule described above will become part of this agreement, and will be incorporated by reference herein, on the date the schedule is adopted or is deemed to have been adopted automatically in accordance with the terms above. The parties will not take any action or actions inconsistent with the NPF's Rehabilitation Plan or Funding Improvement Plan of which the schedule is a part, as modified or amended from time-to-time.

### Section 23. VACATION SAVINGS DEDUCTION (Voluntary)

The Employer will deduct and withhold up to the hourly amounts shown in the Wage Schedules. Each employee will designate the hourly amount they

**35**

wish to have withheld from their paycheck. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

The Board of Trustees of the Sheet Metal Workers' Local 49 Defined Contribution Pension Plan will have authority to receive the vacation deductions, hold them in pooled bank accounts temporarily and without paying interest, deduct PAL and other authorized deductions, deposit them into individual bank accounts or, if no accounts exists, issue checks to the appropriate employees, and pursue the collection of delinquent payments. Journeymen traveling from other local unions jurisdictions to work in Local 49's jurisdiction will not have vacation withheld.

The parties to this Agreement will have the right, upon the recommendation of the Joint Board of Trustees of the Sheet Metal Workers' Local No.49 Defined Contribution Pension Plan, to cancel the Agreement of any Employer found in violation of any provision of this Section and to take any other action it deems necessary, notwithstanding any other provision of section to this Agreement.  Annual time off for vacations for each employee will be scheduled once in every twelve (12) month period from January 1st, through December 31st.  The following rules will apply to the calculation and scheduling of vacations:

(1)     Vacation time off will not exceed five (5) working days. When an employee has less than one (1) week accumulated vacation, the employee will be required to take off only as many vacation days as accumulated, in full days of pay.

(2)     Time off for vacation is not accumulated from one vacation year to the next vacation year.

(3)     There will be an interval of at least three (3) months between a vacation for an employee in one vacation year and the vacation scheduled

36

in the next vacation year.

(4)     Any employee who is unable to take the vacation at the time agreed upon, because of accident or sickness, or because the employee is required by the Employer to work, will be granted the vacation by the Employer as soon thereafter as is reasonable and convenient.

(5)     A two cent ($.02) per hour political check off (PAL) will be handled through the Vacation Fund, pursuant to signed authorization by the employee.  The Fund Administrator will net the two cents out of the employee's vacation withholdings and deposit that amount into the Sheet Metal Workers International Association Local 49 PAL Account.

(6)     Individual members may voluntarily elect to have five cents ($0.05) per hour deducted from their vacation checks and paid to the local United Way on their behalf.

(7)     At the direction of the Local Union, and with thirty (30) days prior notice, the Vacation Fund administrators will, upon receipt of vacation deduction monies, transfer the same to a bank or credit union specified by the Local Union.

Section 24.  DEFINED CONTRIBUTION PENSION PLAN 401(k)
The Employers will contribute the amount specified in the Wage Schedules for each hour worked by each employee covered by this Agreement to the Sheet Metal Workers' Local 49 Defined Contribution Pension Plan. In addition to the Employers' contribution, the employees may elect to contribute up to the amount allowed by law per hour to the Defined Contribution Pension Plan as long as these contributions do not violate the terms of the Trust Agreement, the Defined Contribution Plan, the Internal Revenue Code, Internal Revenue Service regulations, the Employee Retirement Income Security Act, or Department of Labor regulations.  The Local 49 Defined Contribution Plan Board of Trustees will determine contribution level options. Payment will be made on or before the 10th day of the succeeding month and will be

37

remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

The Sheet Metal Workers' Local Union No.49 Defined Contribution Pension Plan Document and Declaration of Trust, established October 1, 1994, is hereby renewed without interruption and will be administered by a Joint Board of six (6) Trustees, composed of three (3) Trustees designated by the NMSMCA, and three (3) Trustees designated by the Union. The Joint Board of Trustees will have full authority and power to administer the plan, decide upon its benefits and rule with respect to all technical questions, which arise.

The Parties to this Agreement will have the right, upon recommendation of the Joint Board of Trustees of the Sheet Metal Workers Local Union No.49 Defined Contribution Pension Plan to cancel the Agreement of any Employer found in violation of any provision of this Section and to take any other action it deems necessary, notwithstanding any other provisions of section to this Agreement to the contrary.

Section 25. SASMI
(a) The Employer will make monthly payments of an amount equal to three percent (3%) of the gross earnings of each employee subject to this Agreement, to the National Stabilization Agreement of Sheet Metal Industry (SASMI) Trust Fund. Gross earnings, for purposes of this Agreement will mean the total of:

(1)    Total wages paid to an employee by the Employer, which are reportable by the employee for federal tax purposes.

(2)    Any and all contributions paid by such Employer on behalf of the employee to a National Pension and the SMWIA Local 49 Family Health Plan. Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(b)  The Employer agrees to adopt the National SASMI Trust as presently constituted and as the same may be amended from time to time, to be bound by all rules and regulations of the plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time, and to sign the Standard Participation Agreement prescribed by the Trustees as a condition of becoming a party to and participant in such Trust.

Section 26. UNION CHECK OFF
(a)  The Employer and the Union hereby agree that a system will be developed and maintained for the purpose of assisting the Union and its members in the collection of dues, initiation fees and other assessments from employees all on a uniform basis and in accordance with the requirements of Section 302 of the National Labor Relations Act.

(b)  Payment will be made on or before the 10th day of the succeeding month and will be remitted by the Employer to the Trust Fund Office via the reporting system set forth in this Agreement.

(c)  Local Union No. 49, in accordance with its Constitution and By Laws, will exercise the prerogative of determining the amounts and schedule of deductions. It is understood and agreed that the amount to be deducted will from time to time change. The Employer does hereby agree to deduct any increased or decreased amounts not later than thirty one (31) days (but not earlier than the beginning of the next Trust Fund reporting period) from receiving written notification from the Union that the amount to be deducted and remitted has been changed.

(d)  The Employer agrees to deduct Union dues, assessment or service fees (excluding fines and initiation fees) from each week's pay of those employees who have authorized such deductions in writing, irrespective of whether they are Union members.  Not later than the tenth day of each month, the Employer shall remit to the designated financial officer of the Union the amount of deductions made for the prior month, together with a list of

38

39

employees and their Social Security numbers for whom such deductions have been made. This option is for members on electronic transfer only. All members are solely responsible for payment of their monthly dues.

## ARTICLE IX
## TOOLS

### Section 1. TOOLS REQUIRED BY EMPLOYEE
Sheet metal journeymen, Intermediate Journeymen, apprentices, preapprentices and classified workers covered by this Agreement will provide for themselves necessary hand tools. The minimum required tool list is: 1-Tool Pouch, 1 Sheet Metal Hammer; 1 Pair Bulldog Snips; 1-Pair of M-1 and M-2 Aviation Snips; 1-Screwdriver; 1-Tape Measure (16 ft minimum); 1-Tri Square; 1-Pair Tongs; 1-Pair Dividers; 1-Awl; 1-Plumb Bob; 1-Set of Allen Wrenches; 1 2-Pair Vise Grips; 1-Phillips Screwdriver; Ratcheting wrench or sockets, and torpedo level.

Note: New 1st year apprentices, new preapprentices and classified workers are required to have the tools shown in the bold text above upon initial employment. They will then be given six months to acquire the rest of the tools on the list.

## ARTICLE X
## GRIEVANCE PROCEDURES

The Union and the Employer, whether party to this Agreement independently or as a member of a multi employer bargaining unit, agree to utilize and be bound by this Article.

### Section 1.
Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, will be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice. The NMSMCA or the Local Union, on its own initiative, may submit

**40**

grievances for determination by the Board as provided in this Section. The grievance procedure set forth in this Article applies only to labor-management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

### Section 2.
Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board will meet promptly on date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board will consist of representatives of the Union and of the NMSMCA and both sides will cast an equal number of votes at each meeting. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board will be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

### Section 3.
Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board. *  Notice of appeal to the Panel

**41**

shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel will meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel will be final and binding.

*All correspondence to the National Joint Adjustment Board shall be sent to the following address: National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA   20153-0956 or 4201 Lafayette Center Drive, Chantilly, VA 20151-1209.

In establishing the grievance procedure of the Standard Form of Union Agreement, it was the intent of Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. to establish a method for resolving grievances permitting appeals for out-of-area Employers from the grievance arbitration procedures established for the territory in which work is performed.  An Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairman of the National Joint Adjustment Board.  Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which work is performed.

For the purposes of this Section, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, may also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel Hearing.

Section 4.

**42**

Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board.  Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article.  The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board. *)

Section 5.
A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party, as they deem necessary and proper, including awards of damages or other compensation.

Section 6.
In the event of non compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law.  If the party seeking to enforce the award prevails in litigation, such party will be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts. Any party that unsuccessfully challenges the validity of an award in a legal proceeding shall also be liable for the costs and attorneys' fees of the opposing parties in the legal proceedings.

Section 7.
Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There will be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint

**43**

Adjustment Board will be final and binding.

Section 8.
In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a) Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the Union representative(s) or of the Employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co Chairmen of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such Panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co Chairmen of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co Chairmen of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representative to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co Chairmen of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area. Such Subcommittees will function as arbitrators and are authorized to resolve all or part of the issues. They are not,

**44**

however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board will be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b) Any application to the National Joint Adjustment Board will be upon forms prepared for that purpose subject to any changes, which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty four (24) hours in advance of the hearing.

(c) The National Joint Adjustment Board shall have the right to establish time limits, which must be met with respect to each and every step or procedure, contained in this Section. In addition, the Co Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, facsimile or telephone notification.

(d) Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

**45**

Section 9.

Any Employer not contributing to the Industry Fund of the United States (IFUS) will be assessed a fee to be determined periodically by the Administrator of the National Joint Adjustment Board. Proceeds will be used to reimburse IFUS for costs of arbitration under the provisions of Article X.

Section 10.

In addition to the settlement of disputes provided in Sections 1 through 8 of this Article, either party may invoke the services of the National Joint Adjustment Board to resolve disputes over the initial establishment of terms for specialty addenda, if the provisions of Article X have been adopted in their entirety, and without modification.

Such a dispute may be submitted upon the request of either party any time that local negotiations for such an agreement have been unsuccessful. Such a dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the Board. The unanimous decision of said Board shall be final and binding upon the parties. There shall be no strike or lockout over such a dispute.

SECTION 11.

In administering and conducting dispute resolution activities under the arbitration procedures of the Standard Form of Union Agreement, the National Joint Adjustment Board, the Sheet Metal Workers' International Association, the Sheet Metal and Air Conditioning Contractors' National Association, Inc., and their representatives, are functioning as arbitrators and not as the representative of any entity that is party to such dispute. Therefore, they shall enjoy all of the rights, privileges, and immunities afforded to arbitrators under applicable law.

All correspondence to the National Joint Adjustment Board shall be sent to the following address: National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA 20153-0956 or 4201 Lafayette Center Drive, Chantilly, VA

**46**

20151-1209.

## ARTICLE XI
## APPRENTICE PROGRAM

Section 1. JOINT APPRENTICE AND TRAINING

(a) To meet the needs and requirements of the trade, all duly qualified apprentice and preapprentice sheet metal workers and apprentice and preapprentice Service & Controls technicians will be under the supervision and control of a Joint Apprenticeship and Training Committee composed of eight (8) members, four (4) of whom will be selected by the NMSMCA and four (4) by the Union. Said Joint Apprenticeship and Training Committee will formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement to govern eligibility, registration, education, transfer, wages, hours and working conditions of duly qualified apprentices and preapprentices. Said rules and regulations, when formulated and adopted by the parties hereto, will be recognized as part of this Agreement.

(b) The Joint Apprenticeship and Training Committee designated herein will serve for the life of this Agreement except that vacancies in said Joint Apprenticeship and Training Committee, caused by resignation or otherwise, may be filled by either party. It is hereby mutually agreed by both parties hereto that they will individually and collectively cooperate to the extent that duly qualified apprentices and preapprentices be given every opportunity to secure proper technical and practical education and experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

1. The parties will review the needs for specialized and skills-upgrade training and cooperate to establish necessary programs, which will then be supervised by the Joint Apprenticeship Training Committee.

(c) It is the understanding of the parties to this Agreement that the funds contributed by signatory Employers to the International Training Institute

**47**

(ITI) and any Local Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeymen who will be employed by Employers in the Sheet Metal Industry not signatory to a Collective Bargaining Agreement providing for contributions to the ITI and a Local JATC. Therefore the trustees of the ITI and Local JATC will adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training will include the reasonable value of all ITI and Local JATC materials, facilities and personnel utilized in training. If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC will be prohibited from utilizing Fund materials and programs.

(d) All applicants for apprenticeship will serve a term of apprenticeship as established by the Joint Apprenticeship and Training Committee.

(e) The parties will establish on a local basis the SMWIA Youth to Youth program (the program) and the procedures to enable all apprentices to participate in the program. The activities of the program that deal with organizing and other traditional union activities shall be funded by the Local Union through a check off in compliance with the provisions of Section 302(c) of the Labor Management Relations Act of 1947.

(f) The parties agree that concentrated apprenticeship training is preferable to night schooling and urge the Joint Apprenticeship and Training Committee to implement concentrated training during the term of this Agreement.

1. The parties recognize that previous experience in the industry can be considered when evaluating and placing sheet metal workers into the apprenticeship program and the JATC shall work cooperatively with the parties in establishing standards for placing employees into the program.

**48**

(g) The parties agree that career-long skill upgrade training is necessary for an effective workforce and agree to undertake those measures available to them to encourage continuing training for sheet metal journeymen.

(h) A graduated scale for apprentices will be established and maintained based on increments described in Wage Schedule. Apprentices will receive wage increases after completing 900 OJT hours and 100 related classroom instructional hours.

Section 2. PREAPPRENTICES
Preapprentices may be recruited by any source available and can pursue entry into the apprentice program by completing the requirements set forth by the Joint Apprenticeship and Training Committee. The Joint Apprenticeship and Training Committee will evaluate the qualifications of preapprentices for such openings during the first year of employment. Preapprentices will not be retained beyond one year unless they have not met the requirements for entry into the apprenticeship program or by their own choice to remain as a preapprentice. The wage scale for preapprentices will be as described in the Wage Schedule. All Preapprentices must meet the membership requirements of Article V, Section 1(a).

Section 3. STANDARDS OF APPRENTICESHIP AND TRAINING
This program has as its purpose the establishment of high standards of apprenticeship training whereby the apprentice, preapprentice, their Employer and the Union will have before them a definite program to enable the apprentice, preapprentice to acquire the necessary manual skill and the required technical knowledge for mastery of the trade to which they are indentured. The following standards for the development of sheet metal apprentices/preapprentices have been prepared by the NMSMCA and Sheet Metal Workers' Local Union No. 49.

(a) Purpose
The purpose of these apprenticeship standards is to encourage more careful selection of young people coming into the trade; also to assist in

**49**

providing training that will equip them for profitable employment and citizenship, and to further the assurance to Employers of proficient workmen to the end that the public may receive the best possible service.

(b)  Contributions
(1)  It is agreed that a contribution by the Employer of the amount as specified in the Wage Schedule will be paid to the Sheet Metal Workers' Joint Apprenticeship and Training Committee for each hour worked.

(c)  Administration
     This is to be used to administer an adequate Joint Apprenticeship Training Program and for all supplies and other expenditures necessary and incidental to the Apprenticeship Training Program, all by establishment and approval of the Joint Apprenticeship and Training Committee.

(d)  Standards
     The Standards of Apprenticeship formulated by the Sheet Metal Workers' Joint Apprenticeship and Training Committee are hereby incorporated by reference, the same as if it were expressly set forth and became a part of this Agreement.  These standards may be modified or altered by that Joint Committee.

(e)  Trust
     The Trust Agreement negotiated by and between the NMSMCA and Sheet Metal Workers' International Association Local Union No. 49 and all amendments thereto during the terms hereof will become binding on all parties bound by this Collective Bargaining Agreement. In this connection, said Trust Agreement will be deemed incorporated herein by reference the same as if it were expressly set forth.

## ARTICLE XII
## STEWARDS

Section 1.  STEWARDS/JOBSITE VISITATION

**50**

(a)  The Union representative will submit to the Employer in writing the name of an employee appointed shop or job steward prior to the effective date of the appointment. The Employer agrees that the designated shop or job steward will be allowed a reasonable amount of time, with pay, to perform the duties as a shop or job steward.

(b)  In case of contemplated layoff, seniority or designated foreman status being considered, the shop or job steward will be the last to be laid off and written notice will be given by the Employer to the Union of any contemplated layoff of a shop or job steward, including the cause of such layoff.

(c)  A shop or job steward will only be laid off for just cause. In the event of a contemplated layoff involving a steward, written notice will be given to the Union not less than twenty four (24) hours and not more than seventy two (72) hours prior to such layoff.

Section 2. JOBSITE VISITATION
The Union will notify management of its intention to visit shops and jobsites prior to visits. Nothing in this section is deemed to prevent the Union from performing its duty of fair representation of its members.

## ARTICLE XIII
## FOREMEN

Section 1.  DESIGNATION
All foremen will be members of Sheet Metal Workers' International Association. Each Employer or shop will have at least one (1) designated foreman. Any job having a journeyman sheet metal worker five (5) consecutive days or having three (3) journeymen sheet metal workers at any one time will have a designated foreman. Journeymen who become eligible under the provisions of this Article for foreman's pay will be paid at the appropriate rate for the entire pay period in which they became eligible.

**51**

Section 2.  PREMIUM PAY
Working foreman will receive premium pay above the minimum rates for journeymen as set forth in the Wage Schedule of this Agreement as follows:

(a)  Working (Low) foremen with five (5) or fewer journeymen working under him.

(b)  Working (High) foreman with six (6) or more journeymen working under him.

(c)  Designated General Foremen will receive wage increase as per wage schedule agreement.

NOTE:  THE MAJOR GOAL OF A FOREMAN IS TO MANAGE THE PRODUCTION OF THE EMPLOYER EITHER IN THE SHOP OR THE FIELD, IN AN EFFECTIVE AND TIMELY MANNER, TO ACHIEVE THE HIGHEST POSSIBLE PROFIT THROUGH QUALITY WORK AND EXPERT CRAFTSMANSHIP.

## ARTICLE XIV

Section I.  WORKING OWNERS
(a)  Provision is hereby made, excepting the provisions of Article III of this Agreement, for the privilege of allowing one (1) bona fide owner who is not a member of Sheet Metal Workers' International Association Local Union No. 49 and who furnishes proof of at least ten percent (10%) bona fide ownership to perform work designated in Article I, Section 1.

(b)  Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.  However, it will be permissible for an owner-member to be the journeyman sheet metal worker.

**52**

## ARTICLE XV

Section I.  EMPLOYER'S EQUIPMENT
The Union will cooperate with the Employer to see that the equipment, tools and trucks of the Employer are kept in the best possible condition. The Employer will furnish such materials as are necessary to facilitate this purpose. Negligence or misuse of the Employer's equipment, tools or trucks will be referred to the Union for appropriate action.  If it is determined by the LJAB or NJAB that the Employee through negligence or misuse damaged the Employer's equipment, tools, or trucks, the Employee will reimburse the Employer for the actual cost of the repair or replacement.

## ARTICLE XVI

Section I.  PASSES
The Employer agrees that passes, special passes and security clearances required on projects will not be a condition of employment provided that the employee is not refused such passes and clearances by the governing agency.  The Employer agrees to pay for all necessary loss of time by these employees in obtaining such passes and clearances and the loss of time in returning such passes when required. Employees must follow company return policy for all badges and or passes issued to them while employed with the employer.

## ARTICLE XVII
## SAFETY TRAINING/CONTINUING EDUCATION

Section I.  OSHA
The Occupational Safety and Health Act of 1970, Parts 1910 and 1926 Safety and Health Regulations for Construction and amendments thereto by any Federal or State of New Mexico enforcement agency is made a part of this Agreement by reference. It is the obligation of the Employer and the Union to be informed of the rules and regulations and amendments thereto.

**53**

## Section 2.  SAFETY EQUIPMENT

The Employer is required to furnish and the employee will use all safety equipment necessary under this Article.  The employee is responsible to furnish and use safety shoes.

## Section 3.  SAFETY TRAINING

All employees will be required to attend safety training classes as may be required by OSHA or other regulatory government agencies.  Classes will be scheduled and conducted by the Local Union. Job specific safety training will be scheduled and conducted by the Employer. It is understood that members will be required to attend safety training on their own time.

## Section 4.  CONTINUING EDUCATION

Employers may provide continuing education for Construction Management and Administrative Training for "designated" journeymen and foremen. Journeymen will be required to abide by requirements of the state of New Mexico when renewing their certificate of competence (NMJSM) employees invited (in writing) by the Employer to attend training sessions.

It is understood that only designated journeymen and foremen will be paid for attending training classes required by the Employer.  At the discretion of each Employer, others may be allowed to voluntarily attend on their own time.

## ARTICLE XVIII

### Section 1.  PICK UP TIME

The foreman will designate adequate time to pick up tools.

## ARTICLE XIX

### Section 1.  CHANGE SHACKS

The Employer will provide change shacks or similar facilities on all industrial jobs.

**54**

## ARTICLE XX

### Section 1.  COMPOSITE CREWS

When working in a composite crew with other crafts on industrial jobs, sheet metal workers will receive wages that match the highest total wage package, including hazard pay, travel time, mileage, zone or subsistence.

## ARTICLE XXI

### Section 1.  LABOR COMMITTEE

On any item, whether or not addressed by this Agreement, affecting the sheet metal industry, the Local Union Labor Committee and the Management Labor Committee will meet, discuss, and attempt to resolve the matter and, if resolved, will issue a written decision promptly.

### Section 2.  LABOR-MANAGEMENT COMMITTEE

SMACNA and the SMWIA are committed to promoting productive and cooperative labor-management relations.  In furtherance of this goal, the NMSMCA and Local Union agree to establish a labor-management committee, which shall meet on a regular basis to discuss industry issues of mutual concern. Such committees will strive to improve communications, understand and respond to industry direction and trends, and resolve common issues collaboratively.

## ARTICLE XXII
## WORK RULES, OBLIGATIONS AND RESPONSIBILITIES

Local Union and Employers will maintain the highest degree of communication and cooperation to assure the success of the industry.

Foremen will be responsible for the coordination and direction of the job or jobs, including the leadership of the journeymen, intermediate journeyman, apprentices, preapprentices, classified workers and material handlers and to

**55**

require and maintain the highest standards of the industry.

Stewards will be responsible to assist in any way possible to assure the quality and productivity for the success of the job.

Journeymen and intermediate journeymen will perform the duties of the trade, which are assigned to them by the Employer or the foreman in the most productive manner and require and maintain the highest standards of the industry.

Apprentices, preapprentices, classified workers and material handlers will perform diligently and faithfully the work of the trade and other duties as assigned by the Employer, foreman or journeymen.

## ARTICLE XXIII

Section 1.  REST BREAKS
(a)  This Article provides for the entitlement of one rest break per workday for all employees covered by this Agreement.

(b)  The rest break will be a maximum of ten (10) minute duration.

(c)  For the purpose of this Agreement, the rest break will be considered time worked.

(d)  The rest break will not be taken in circumstances where it is prohibited in contract form by an owner or general contractor and observed by all trades on said project.

## ARTICLE XXIV

Section 1.  PREDETERMINED WAGE INFORMATION
(a)  Upon written request by the Union, the Employer will furnish to the Union certain information in writing on specific jobs regarding the type

56

of work performed, number of hours worked, and the wage rates paid to journeymen and apprentices.

(b)  Upon request by the Employer, the Union will furnish proof that such information has been requested by a bona fide government agency or the Sheet Metal Workers' International Association and that the purpose of the request is for future predetermination of wage rates on similar work.

## ARTICLE XXV

Section 1.  SEPARATE AGREEMENTS AND ADDENDA
This Agreement authorizes the negotiation of separate Agreements or addenda between Local Union No. 49 and any Employer or entity signatory hereto. Such Agreements will, however, be in writing and will be available through the NMSMCA or the SMWIA Local 49 offices.

## ARTICLE XXVI

Section 1.  REPAIR OF DEFECTIVE AND/OR INFERIOR WORK
Any defective and/or inferior work installed through the fault or neglect of the journeyman will be corrected by the journeyman at no labor cost to the Employer, provided, plans and specifications or a working sketch has been furnished to the journeyman or the work was installed contrary to the applicable codes. Corrections will be made as soon as possible in order not to delay the progress of the job. This determination and the final decision will be made by the Union.

## ARTICLE XXVII

Section 1.  TARGETED JOBS/MARKET ADVANTAGE
Additional relief may be granted by the Business Manager on any job with serious merit shop competition. On such targeted jobs, the Union will notify the NMSMCA in advance of bid opening of the terms of said targeted job. It will be the responsibility of the each individual Employer to obtain this

57

information from either the NMSMCA or the Local Union. Such terms will be confirmed in writing to the NMSMCA and the bid results will be submitted to the Local Union.

## ARTICLE XXVIII
## EFFECTIVE AND EXPIRATION DATES

### Section 1.  TERM

This Agreement will become effective on the 1st day of April, 2008 and will remain in full force and effect until the 31st day of March, 2013, and will continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date.  In the event such notice of reopening is served, this Agreement will continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date contained in this Section will not be effective in the event proceedings under Article X, Section 8, are not completed prior to that date. In that event, this Agreement will continue in full force and effect until modified by order of the National Joint Adjustment Board, or until the procedures under Article X, Section 8, have been otherwise completed.

In the event Federal Davis Bacon or state predetermined wage scale should be discontinued, this Agreement will be reopened for purposes of wage adjustment.

### Section 2.  LEGALITY

If, pursuant to federal or state law, any provision of this Agreement will be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement will remain in full force and effect.

In applying the terms of this Agreement and in fulfilling their obligations there under, neither the Employer nor the Union will discriminate in any manner prohibited by law.

**58**

### Section 3.  REOPENING

Notwithstanding any other provision of this Article or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement will be adopted by the National Joint Labor Relations Adjustment Committee, any party to this Agreement, upon the service of notice to all other parties hereto, will have this Agreement reopened thirty (30) days thereafter for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof.  There will be no strike or lockout over this issue.

### Section 4.  REPUDIATION

Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement or during the term of any extension, modification or amendment to this Agreement.

### Section 5.  AUTHORIZATION

By execution of this Agreement, the Employer authorizes the New Mexico Sheet Metal Contractors' Association, Inc., to act as collective bargaining representative for all matters relating to this Agreement unless this authorization is withdrawn by written notice to the Association and the Union at least 150 days prior to the then current expiration dates of the Agreement.

In witness whereof, the parties hereto affix their signatures and seal this day of _____, 2008.

In witness whereof, the parties hereto affix their signatures and seal this day of _____, 2008.

**59**

| NEW MEXICO SHEET METAL CONTRACTORS' ASSOCIATION, INC. | SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL UNION NO. 49 |
|---|---|
| *[signature]* | *[signature]* |
| Negotiating Committee Co-Chairman Keith E. Wilson | Negotiating Committee Co-Chairman Ray Dize |
| *[signature]* | *[signature]* |
| Committee Member Richard Montgomery | Committee Member Jerry Armet |
| *[signature]* | *[signature]* |
| Committee Member Kevin Yearout | Committee Member Vince Alvarado |
| *[signature]* | *[signature]* |
| Committee Member David D. McCoy | Committee Member Richard Espinoza |
| *[signature]* | *[signature]* |
| Committee Member Rob Rutherford | Committee Member Dominic Baca |
| *[signature]* | *[signature]* |
| Committee Member Mark Ellis | Committee Member Markus Garcia |
| _____ | _____ |
| Independent Employer | Local 49 Business Manager |
| Date: | Date: |

The Standard Form of Union Agreement is a recommended contract form that is revised from time to time by the Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. In establishing such a recommended contract form, neither the Sheet Metal Workers' International Association, nor the Sheet Metal and Air Conditioning Contractors' National Association Inc. has acted as the bargaining representative of any entity that may adopt all or part of the language of the Standard Form of Union Agreement. Furthermore, neither the Sheet Metal Workers' International Association nor the Sheet Metal and Air Conditioning Contractors' National Association, Inc., shall be deemed to be a party to any such collective bargaining agreement including such language.

**60**

## INDEX

| | |
|---|---|
| Air Pollution Control Systems | 23 |
| Apprentice Program | 47 |
| Authorization | 59 |
| Change Shacks | 54 |
| Composite Crews | 55 |
| Conditions | 5 |
| Continuing Education | 53 |
| Contractual Benefits | 24 |
| Defined Contribution Pension Plan | 37 |
| Dispatch | 19 |
| Effective and Expiration Dates | 58 |
| Employee Assistance Program (Referral) | 16 |
| Employer's Equipment | 53 |
| Employment | 3 |
| Family Health Plan | 33 |
| Foremen | 51, 52 |
| Grievance Procedures | 40 |
| Higher Wage Scale | 22 |
| Hiring | 5, 7 |
| Hiring Procedure | 5, 7 |
| Journeymen | 6 |
| Intermediate Journeymen | 6 |
| Classified Workers | 3, 6 |
| Apprentices First and Second Year | 8 |
| Apprentices Third and Fourth Year | 8 |
| Holidays | 17 |
| Industrial Zone | 20 |
| Intermediate Journeyman (Qualifications) | 6 |
| International Training Institute | 29 |
| Joint Apprenticeship and Training | 47 |
| Joint Hiring Committee | 10, 12 |
| Journeyman (Qualifications) | 5 |
| Jurisdiction | 1 |

**61**

Labor Committee/Management _____ 55
Legality _____ 58
Local (NMSMCA) Industry Fund _____ 28
Los Alamos Zone (Zone 3) _____ 20
Manufactured Items _____ 22
Material Handlers _____ 12
Membership (Union) Requirement _____ 4
Monthly Reports _____ 31
National Industry Fund _____ 26
National Pension Fund _____ 34
International Training Institute _____ 29
NEMI _____ 29
Notification by Employer _____ 18
Obligation to Furnish Sheet Metal Workers _____ 4
OSHA _____ 53
Overtime _____ 12, 18
Passes _____ 53
Payment of Trust Funds _____ 31
Payment of Wages /Electronic Transfer _____ 24
Pick Up Time _____ 54
Pre-Employment Physical _____ 16
Preapprentices _____ 49
Predetermined Wage Information _____ 56
Prefabrication _____ 3
Preface _____ 1
Project Agreements / Maintenance Agreement (Contributions) _____ 29
Rate of Pay _____ 12
Ratios _____ 4
Reopening _____ 59
Repair of Defective and/or Inferior Work _____ 57
Report Due Dates and Penalties _____ 31
Repudiation _____ 59
Rest Breaks _____ 56
Safety Equipment _____ 54

Safety Training _____ 54
SASMI _____ 38
Scope of Work _____ 2
Security Requirements _____ 32
Separate Agreements and Addenda _____ 57
Shift Work _____ 18
Show Up Time _____ 26
Signature Page _____ 60
SMOHI _____ 29
Standards of Apprenticeship and Training _____ 49
Stewards/Jobsite Visitation _____ 50, 51
Subcontracting _____ 3
Subsistence _____ 19
Substance Abuse / Drug Testing _____ 13
Targeted Jobs / Market Advantage _____ 57
Termination or Discharge _____ 8, 11
Territorial Jurisdiction _____ 23, 24
Tools Required by Employee _____ 40
Travel _____ 19
Trust Funds _____ 21
Union Check Off _____ 39
Union Obligation _____ 4
Vacation Savings Deduction _____ 35
Wages _____ 21
Higher Wage Scale _____ 22
Wage Schedules _____ 64-70
Welfare Benefits _____ 24
Work Day _____ 12, 17
Work Jurisdiction _____ 2
Work Outside This Jurisdiction _____ 23
Work Preservation _____ 2
Work Rules, Obligations and Responsibilities _____ 55
Working Owners _____ 52
Zone 1, Zone 2, Zone 3 _____ 20

**62**

**63**

## SMWIA Local 49 Wage Schedule April 1, 2008

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 20.95 | $ 20.95 | $ 27.95 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 4.92 | $ 4.92 | $ 4.92 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | $ 0.56 | $ 0.50 | $ 0.50 |
| SASM | $ 1.11 | $ 1.14 | $ 1.17 |
| Total Package | $ 35.59 | $ 40.82 | $ 41.65 |
| Union Check Off | $ 1.14 | $ 1.19 | $ 1.23 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice

| | Zone 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | |
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% |
| | 1.0 | 1.6 | 2.0 | 2.6 | 3.0 | 3.6 | 4.0 | 4.6 |
| Base Rate of Pay | $ 12.00 | $ 13.00 | $ 15.21 | $ 16.48 | $ 17.75 | $ 19.00 | $ 20.28 | $ 21.55 |
| National Pension | $ 2.46 | $ 2.71 | $ 2.96 | $ 3.20 | $ 3.45 | $ 3.69 | $ 3.94 | $ 4.19 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | | | | | | | | |
| SASM | $ 0.65 | $ 0.70 | $ 0.75 | $ 0.70 | $ 0.79 | $ 0.84 | $ 0.88 | $ 0.93 |
| Total Package | $ 23.56 | $ 25.08 | $ 26.53 | $ 28.18 | $ 29.75 | $ 31.28 | $ 32.98 | $ 34.42 |
| Union Check Off | $ 0.72 | $ 0.80 | $ 0.83 | $ 0.86 | $ 0.74 | $ 0.93 | $ 0.99 | $ 1.03 |
| Vacation Withholding | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

### Preapprentice

| | 40.5% |
|---|---|
| Base Rate of Pay | $ 10.27 |
| Family Health Plan | $ - |
| National Pension | $ 0.25 |
| Local Training | $ 0.05 |
| National Industry | $ 0.07 |
| Total Package | $ 10.62 |
| Union Check Off | $ 0.35 |

### Classified Worker

| | Step 1 | Step 2 | Step 3 | Step 4 | Experience in the SM Industry for Classified Worker Step Determination |
|---|---|---|---|---|---|
| Base Rate of Pay | $ 9.87 | $ 10.50 | $ 12.56 | $ 13.18 | Step 1: No Experience |
| Family Health Plan | $ - | $ - | $ 6.67 | $ 6.67 | Step 2: After 500 Hours Worked |
| National Pension | $ 1.73 | $ 1.76 | $ 2.12 | $ 2.56 | Step 3: After 2000 Hours Worked |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | Step 4: After 6000 Hours Worked |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | |
| Total Package | $ 10.70 | $ 11.01 | $ 13.76 | $ 22.51 | |
| Union Check Off | $ 0.40 | $ 0.41 | $ 0.48 | $ 0.59 | |

### Material Handler

| | 1st 600 | 2nd 600 | Over 1200 |
|---|---|---|---|
| | 30% | 35% | 40% |
| Base Rate of Pay | $ 7.51 | $ 8.67 | $ 10.14 |
| Family Health Plan | $ - | $ - | $ 6.67 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Total Package | $ 7.58 | $ 8.94 | $ 16.88 |
| Union Check Off | $ 0.34 | $ 0.40 | $ 0.46 |

### Foreman Premium

| | |
|---|---|
| Low Foreman ( 5 or fewer Journeymen) | $1.50 |
| High Foreman ( 6 or more Journeymen) | $2.35 |
| Designated General Foreman | $2.75 |

---

## SMWIA Local 49 Wage Schedule April 1, 2009

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 26.55 | $ 27.55 | $ 28.55 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 5.26 | $ 5.26 | $ 5.26 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | $ 0.50 | $ 0.50 | $ 0.50 |
| SASM | $ 1.18 | $ 1.18 | $ 1.21 |
| Total Package | $ 41.18 | $ 42.21 | $ 43.24 |
| Union Check Off | $ 1.20 | $ 1.24 | $ 1.28 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice

| | Zone 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | |
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% |
| | 1.0 | 1.6 | 2.0 | 2.6 | 3.0 | 3.6 | 4.0 | 4.6 |
| Base Rate of Pay | $ 13.28 | $ 14.51 | $ 15.94 | $ 17.26 | $ 18.59 | $ 19.92 | $ 21.25 | $ 22.58 |
| National Pension | $ 2.63 | $ 2.90 | $ 3.16 | $ 3.42 | $ 3.68 | $ 3.95 | $ 4.21 | $ 4.48 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | | | | | | | | |
| SASM | $ 0.68 | $ 0.73 | $ 0.77 | $ 0.82 | $ 0.87 | $ 0.92 | $ 0.96 | $ 1.01 |
| Total Package | $ 24.30 | $ 25.95 | $ 27.56 | $ 29.21 | $ 30.86 | $ 32.60 | $ 34.13 | $ 35.78 |
| Union Check Off | $ 0.62 | $ 0.66 | $ 0.72 | $ 0.78 | $ 0.84 | $ 0.90 | $ 0.96 | $ 1.02 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 | $ 2.00 | $ 2.00 | $ 2.00 | $ 2.00 | $ 2.00 |

### Preapprentice

| | 40.5% |
|---|---|
| Base Rate of Pay | $ 10.78 |
| Family Health Plan | $ - |
| National Pension | $ 0.27 |
| Local Training | $ 0.05 |
| National Industry | $ 0.07 |
| Total Package | $ 11.13 |
| Union Check Off | $ 0.43 |

### Classified Worker

| | Step 1 | Step 2 | Step 3 | Step 4 | Experience in the SM Industry for Classified Worker Step Determination |
|---|---|---|---|---|---|
| Base Rate of Pay | $ 9.30 | $ 9.96 | $ 11.42 | $ 13.61 | Step 1: No Experience |
| Family Health Plan | $ - | $ - | $ 6.67 | $ 6.67 | Step 2: After 500 Hours Worked |
| National Pension | $ 1.85 | $ 1.90 | $ 2.27 | $ 2.74 | Step 3: After 2000 Hours Worked |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | Step 4: After 6000 Hours Worked |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | |
| Total Package | $ 11.25 | $ 11.96 | $ 20.46 | $ 23.32 | |
| Union Check Off | $ 0.42 | $ 0.43 | $ 0.51 | $ 0.62 | |

### Material Handler

| | 1st 600 | 2nd 600 | Over 1200 |
|---|---|---|---|
| | 30% | 35% | 40% |
| Base Rate of Pay | $ 7.97 | $ 9.30 | $ 10.62 |
| Family Health Plan | $ - | $ - | $ 6.67 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Total Package | $ 8.04 | $ 9.37 | $ 17.36 |
| Union Check Off | $ 0.36 | $ 0.42 | $ 0.46 |

### Foreman Premium

| | |
|---|---|
| Low Foreman ( 5 or fewer Journeymen) | $1.50 |
| High Foreman ( 6 or more Journeymen) | $2.35 |
| Designated General Foreman | $2.75 |

## SMWIA Local 49 Wage Schedule April 1, 2010

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 27.78 | $ 28.78 | $ 28.78 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 5.03 | $ 5.03 | $ 5.03 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | $ 0.60 | $ 0.60 | $ 0.50 |
| SASMI | $ 1.25 | $ 1.25 | $ 1.28 |
| Total Package | $ 42.93 | $ 43.93 | $ 44.68 |
| Union Check Off | $ 1.29 | $ 1.30 | $ 1.34 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice

| | | Zone 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | | |
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% | |
| | 1.5 | 1.5 | 2.0 | 2.5 | 3.0 | 3.5 | 4.0 | 4.5 | |
| Base Rate of Pay | $ 13.89 | $ 15.28 | $ 16.67 | $ 18.06 | $ 19.45 | $ 20.84 | $ 22.22 | $ 23.61 | |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | |
| National Pension | $ 2.82 | $ 3.10 | $ 3.38 | $ 3.66 | $ 3.95 | $ 4.25 | $ 4.51 | $ 4.79 | |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | |
| Local 49 DCP (401-K) | | | | | | | | | |
| SASMI | - | - | - | - | - | - | - | - | |
| Total Package | $ 25.12 | $ 26.04 | $ 28.56 | $ 30.26 | $ 32.61 | $ 33.73 | $ 35.44 | $ 37.18 | |
| Union Check Off | $ 0.63 | $ 0.69 | $ 0.83 | $ 0.89 | $ 0.88 | $ 0.94 | $ 1.00 | $ 1.06 | |
| Vacation Withholding | | | | | | | | | |

### Preapprentice

| | 40.5% |
|---|---|
| Base Rate of Pay | $ 11.25 |
| Family Health Plan | $ - |
| National Pension | $ 0.29 |
| Local Training | $ 0.03 |
| National Industry | $ 0.07 |
| Total Package | $ 11.64 |
| Union Check Off | $ 0.51 |

### Classified Worker

| | Step 1 | Step 2 | Step 3 | Step 4 | |
|---|---|---|---|---|---|
| | 30% | 36% | 43% | 50% | Experience in the SM Industry |
| Base Rate of Pay | $ 9.72 | $ 10.00 | $ 11.95 | $ 14.44 | for Classified Worker Step Determination |
| Family Health Plan | $ - | $ - | $ 6.67 | $ 6.67 | Step 1: No Experience |
| National Pension | $ 1.06 | $ 2.03 | $ 2.43 | $ 2.93 | Step 2: After 500 Hours Worked |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | Step 3: After 2000 Hours Worked |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | Step 4: After 6000 Hours Worked |
| Total Package | $ 11.92 | $ 12.13 | $ 21.15 | $ 24.15 | |
| Union Check Off | $ 0.44 | $ 0.45 | $ 0.54 | $ 0.65 | |

### Material Handler

| | 1st 600 | 2nd 600 | Over 1200 |
|---|---|---|---|
| | 30% | 35% | 40% |
| Base Rate of Pay | $ 8.33 | $ 9.72 | $ 11.11 |
| Family Health Plan | $ - | $ - | $ 6.67 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Total Package | $ 8.40 | $ 9.79 | $ 17.85 |
| Union Check Off | $ 0.38 | $ 0.44 | $ 0.50 |

### Foreman Premium

| | | |
|---|---|---|
| Low Foreman  ( 5 or fewer Journeymen) | $1.50 | |
| High Foreman  ( 6 or more Journeymen) | $2.25 | |
| Designated General Foreman | $2.75 | |

---

## SMWIA Local 49 Wage Schedule April 1, 2011

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 29.17 | $ 30.17 | $ 31.17 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 5.91 | $ 5.91 | $ 5.91 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | $ 0.50 | $ 0.50 | $ 0.50 |
| SASMI | $ 1.25 | $ 1.28 | $ 1.28 |
| Total Package | $ 44.54 | $ 45.57 | $ 46.50 |
| Union Check Off | $ 1.35 | $ 1.36 | $ 1.40 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice

| | | Zone 1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | | |
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% | |
| | 1.5 | 1.5 | 2.0 | 2.5 | 3.0 | 3.5 | 4.0 | 4.5 | |
| Base Rate of Pay | $ 14.59 | $ 16.04 | $ 17.50 | $ 18.96 | $ 20.42 | $ 21.88 | $ 23.34 | $ 24.79 | |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | |
| National Pension | $ 2.96 | $ 3.26 | $ 3.55 | $ 3.85 | $ 4.14 | $ 4.44 | $ 4.73 | $ 5.03 | |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | |
| Local Industry | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | $ 0.36 | |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | |
| Local 49 DCP (401-K) | | | | | | | | | |
| SASMI | $ 0.73 | $ 0.76 | $ 0.85 | $ 0.89 | $ 0.84 | $ 0.99 | $ 1.06 | $ 1.09 | |
| Total Package | $ 25.99 | $ 27.78 | $ 29.59 | $ 31.40 | $ 33.21 | $ 35.02 | $ 36.82 | $ 38.62 | |
| Union Check Off | $ 0.68 | $ 0.72 | $ 0.79 | $ 0.85 | $ 0.82 | $ 0.88 | $ 1.00 | $ 1.12 | |
| Vacation Withholding | | | | | $ 1.00 | $ 1.00 | $ 2.00 | $ 2.00 | |

### Preapprentice

| | 40.5% |
|---|---|
| Base Rate of Pay | $ 11.81 |
| Family Health Plan | $ - |
| National Pension | $ 0.30 |
| Local Training | $ 0.03 |
| National Industry | $ 0.07 |
| Total Package | $ 12.21 |
| Union Check Off | $ 0.53 |

### Classified Worker

| | Step 1 | Step 2 | Step 3 | Step 4 | |
|---|---|---|---|---|---|
| | 30% | 36% | 43% | 50% | Experience in the SM Industry |
| Base Rate of Pay | $ 10.21 | $ 10.50 | $ 12.54 | $ 15.17 | for Classified Worker Step Determination |
| Family Health Plan | $ - | $ - | $ 6.67 | $ 6.67 | Step 1: No Experience |
| National Pension | $ 2.07 | $ 2.13 | $ 2.55 | $ 3.08 | Step 2: After 500 Hours Worked |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | Step 3: After 2000 Hours Worked |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | Step 4: After 6000 Hours Worked |
| Total Package | $ 12.38 | $ 12.73 | $ 21.88 | $ 25.02 | |
| Union Check Off | $ 0.46 | $ 0.47 | $ 0.56 | $ 0.68 | |

### Material Handler

| | 1st 600 | 2nd 600 | Over 1200 |
|---|---|---|---|
| | 30% | 35% | 40% |
| Base Rate of Pay | $ 8.75 | $ 10.21 | $ 11.67 |
| Family Health Plan | $ - | $ - | $ 6.67 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Total Package | $ 8.82 | $ 10.28 | $ 18.41 |
| Union Check Off | $ 0.39 | $ 0.46 | $ 0.53 |

### Foreman Premium

| | | |
|---|---|---|
| Low Foreman  ( 5 or fewer Journeymen) | $1.50 | |
| High Foreman  ( 6 or more Journeymen) | $2.25 | |
| Designated General Foreman | $2.75 | |

## SMWIA Local 49 Wage Schedule April 1, 2012

### Journeyman

| | Zone 1 | Zone 2 | Zone 3 |
|---|---|---|---|
| Base Rate of Pay | $ 30.03 | $ 31.00 | $ 32.50 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 6.21 | $ 6.21 | $ 6.21 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | $ 0.50 | $ 0.50 | $ 0.50 |
| SASMI | $ 1.30 | $ 1.33 | $ 1.36 |
| Total Package | $ 46.32 | $ 47.35 | $ 48.38 |
| Union Check Off | $ 1.38 | $ 1.42 | $ 1.47 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

### Apprentice (Zone 1)

| | 1st Year | | 2nd Year | | 3rd Year | | 4th Year | |
|---|---|---|---|---|---|---|---|---|
| | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% |
| Base Rate of Pay | $ 15.30 | $ 16.03 | $ 18.38 | $ 19.99 | $ 21.42 | $ 22.95 | $ 24.48 | $ 26.01 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 3.11 | $ 3.42 | $ 3.73 | $ 4.04 | $ 4.35 | $ 4.66 | $ 4.97 | $ 5.28 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 |
| SASMI | $ 0.75 | $ 0.81 | $ 0.89 | $ 0.92 | $ 0.97 | $ 1.03 | $ 1.08 | $ 1.14 |
| Total Package | $ 26.87 | $ 28.77 | $ 30.58 | $ 32.58 | $ 34.45 | $ 36.35 | $ 38.24 | $ 40.14 |
| Union Check Off | $ 0.69 | $ 0.76 | $ 0.83 | $ 0.90 | $ 0.96 | $ 1.03 | $ 1.10 | $ 1.17 |
| Vacation Withholding | $ - | $ - | $ - | $ - | $ 1.00 | $ 1.00 | $ 2.00 | $ 2.00 |

### Preapprentice

| | 40.5% |
|---|---|
| Base Rate of Pay | $ 12.39 |
| Family Health Plan | $ - |
| National Pension | $ 0.32 |
| Local Training | $ 0.03 |
| National Industry | $ 0.07 |
| Total Package | $ 12.81 |
| Union Check Off | $ 0.56 |

### Classified Worker

| | Step 1 | Step 2 | Step 3 | Step 4 |
|---|---|---|---|---|
| | 30% | 38% | 43% | 82% |
| Base Rate of Pay | $ 10.71 | $ 11.02 | $ 13.16 | $ 15.91 |
| Family Health Plan | $ - | $ - | $ 6.67 | $ 6.67 |
| National Pension | $ 2.18 | $ 2.24 | $ 2.68 | $ 3.23 |
| Local Training | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 | $ 0.07 |
| Total Package | $ 12.99 | $ 13.36 | $ 22.61 | $ 25.91 |
| Union Check Off | $ 0.48 | $ 0.50 | $ 0.59 | $ 0.72 |

Experience in the SM Industry for Classified Worker Step Determination:
Step 1: No Experience
Step 2: After 500 Hours Worked
Step 3: After 2000 Hours Worked
Step 4: After 6000 Hours Worked

### Material Handler

| | 1st 500 (30%) | 2nd 500 (35%) | Over 1000 (42%) |
|---|---|---|---|
| Base Rate of Pay | $ 9.18 | $ 10.71 | $ 12.24 |
| Family Health Plan | $ - | $ - | $ 6.67 |
| National Pension | $ 0.07 | $ 0.07 | $ 0.07 |
| Total Package | $ 9.25 | $ 10.78 | $ 18.98 |
| Union Check Off | $ 0.41 | $ 0.48 | $ 0.55 |

### Foreman Premium

| | |
|---|---|
| Low Foreman (5 or fewer Journeymen) | $1.50 |
| High Foreman (6 or more Journeymen) | $2.25 |
| Designated General Foreman | $2.75 |

---

## SMWIA Local 49 Wage Schedule (Intermediate Journeymen)

| | Intermediate Journeyman July 1, 2008 | Intermediate Journeyman April 1, 2009 (82%) | Intermediate Journeyman April 1, 2010 (82%) |
|---|---|---|---|
| Base Rate of Pay | $ 23.48 | $ 21.78 | $ 22.78 |
| Family Health Plan | $ 6.67 | $ 6.67 | $ 6.67 |
| National Pension | $ 4.47 | $ 4.47 | $ 4.62 |
| SMOHIT | $ 0.02 | $ 0.02 | $ 0.02 |
| NEMI | $ 0.03 | $ 0.03 | $ 0.03 |
| National Training (ITI) | $ 0.12 | $ 0.12 | $ 0.12 |
| Local Training | $ 0.42 | $ 0.42 | $ 0.42 |
| Local Industry | $ 0.38 | $ 0.38 | $ 0.38 |
| National Industry | $ 0.07 | $ 0.07 | $ 0.07 |
| Local 49 DCP (401-K) | $ 0.41 | $ 0.41 | $ 0.41 |
| SASMI | $ 1.04 | $ 0.99 | $ 1.02 |
| Total Package | $ 37.11 | $ 35.36 | $ 38.54 |
| Union Check Off | $ 1.06 | $ 0.98 | $ 1.03 |
| Vacation Withholding | $ 2.00 | $ 2.00 | $ 2.00 |

| Intermediate Journeyman April 1, 2011 | | |
| --- | --- | --- |
| | | 82% Rate |
| Base Rate of Pay | $ | 23.92 |
| Family Health Plan | $ | 6.67 |
| National Pension | $ | 4.85 |
| SMOHIT | $ | 0.02 |
| NEMI | $ | 0.03 |
| National Training (ITI) | $ | 0.12 |
| Local Training | $ | 0.42 |
| Local Industry | $ | 0.38 |
| National Industry | $ | 0.07 |
| Local 49 DCP (401-K) | $ | 0.41 |
| SASMI | $ | 1.06 |
| Total Package | $ | 37.95 |
| | | |
| Union Check Off | $ | 1.08 |
| Vacation Withholding | $ | 2.00 |

| Intermediate Journeyman April 1, 2012 | | |
| --- | --- | --- |
| | | 82% Rate |
| Base Rate of Pay | $ | 25.09 |
| Family Health Plan | $ | 6.67 |
| National Pension | $ | 5.10 |
| SMOHIT | $ | 0.02 |
| NEMI | $ | 0.03 |
| National Training (ITI) | $ | 0.12 |
| Local Training | $ | 0.42 |
| Local Industry | $ | 0.38 |
| National Industry | $ | 0.07 |
| Local 49 DCP (401-K) | $ | 0.41 |
| SASMI | $ | 1.11 |
| Total Package | $ | 39.42 |
| | | |
| Union Check Off | $ | 1.13 |
| Vacation Withholding | $ | 2.00 |

**Intermediate Journeymen Qualifications:**

1. Successfully completed a sheet metal apprenticeship program registered with the Bureau of Apprenticeship & Training or the State Apprenticeship Council but do not have a current New Mexico Certificate of Competence (NMJSM)

2. Have four (4) years and six-thousand (6,000) hours of actual practical working experience for a licensed contractor but do not have a current New Mexico Certificate of Competence (NMJSM). Organized members may become journeymen by obtaining 500 hours under this agreement and obtaining a current New Mexico Certificate of Competence (NMJSM).

3. Current members of the SMWIA who transfer into the local union from other areas will be elevated to journeyman status once they obtain their New Mexico Certificate of Competence (NMJSM).

